EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Daisy Annette Santiago Rivera<br>    Demandante-Recurrida<br><br>            v.<br><br>Osvaldo Ríos Alonso<br>    Demandado-Peticionario | Certiorari<br><br>2002 TSPR 15<br><br>156 DPR _____ |

Número del Caso: CC-2000-540


Fecha: 7/febrero/2002


Tribunal de Circuito de Apelaciones:
                        Circuito Regional VII


Juez Ponente:
                        Hon. José L. Miranda de Hostos


Abogado de la Parte Peticionaria:
                        Lcdo. Roberto O. Maldonado Nieves


Abogado de la Parte Recurida:
                        Lcdo. Mark Anthony Bimbela



Materia: Daños y Perjuicios




        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correcciones del proceso
        de compilación y publicación oficial de las decisiones del
        Tribunal. Su distribución electrónica se hace como un servicio
        público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Daisy Annette Santiago Rivera

    Demandante-recurrida

        vs.                  CC-2000-540       CERTIORARI

Osvaldo Ríos Alonso

    Demandado-peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 7 de febrero de 2002

En o alrededor <u>de mayo de 1995</u>, la demandante-recurrida, la Sra. Daisy Annette Santiago, conoció al demandado-peticionario, el Sr. Osvaldo Ríos Alonso, comenzando una relación sentimental con éste que duró hasta <u>el 24 de noviembre de 1996</u>. Dicha relación consensual comprendía, además, una relación de trabajo puesto que la Sra. Santiago, durante dicho período de tiempo, fungía como asistente personal del Sr. Ríos, devengando un ingreso por dichas labores. Durante la referida relación, la Sra. Santiago alega que en varias ocasiones fue agredida, <u>física y sicológicamente</u>, por el Sr. Ríos como consecuencia de lo cual sufrió serios <u>daños físicos y emocionales</u>, recibiendo asistencia médica, <u>sicológica y siquiátrica</u>.

**El 21 de noviembre de 1997**, la Sra. Santiago entabló una reclamación de daños y perjuicios ante el Tribunal de Primera Instancia, Sala Superior de Carolina[1], en contra del Sr. Ríos, por los alegados actos de agresión, <u>tanto físicos como emocionales</u>, que, alegadamente, constituyeron un <u>patrón de conducta</u> violenta que le causó graves daños y angustias mentales, estimados los mismos en una cantidad no menor de $1,000,000.00. Además del alegado "patrón de violencia psicológica", durante la relación sentimental y de trabajo, la demandante sostuvo que los actos de agresión física ocurrieron, <u>específicamente</u>, en las siguientes fechas: febrero de 1996; en o alrededor de mayo del 1996; en o alrededor de septiembre de 1996; y el último, el 24 de noviembre de 1996, el cual suscitó la ruptura definitiva de la relación que éstos sostenían.

Luego de que el Sr. Ríos contestara la demanda[2] y las partes iniciaran el descubrimiento de prueba, el 16 de febrero de 1999, <u>el Sr. Ríos solicitó la desestimación parcial de la demanda mediante el mecanismo procesal de la sentencia</u>

---

[1] La demandante entabló paralelamente una reclamación basada en los mismos hechos ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico, al amparo de la ley federal, conocida como el "Violence Against Women Act", 42 U.S.C. §13701 Y 13981, que confiere una causa de acción privada a cualquier persona que haya sido objeto de un acto de violencia motivado por su género.

[2] En la misma, el Sr. Ríos reconvino alegando que, desde que la relación terminó, la Sra. Santiago ha realizado una campaña de difamación, libelo y calumnia contra éste en la prensa radial, escrita y televisión sobre su conducta, estilo de vida, personalidad y sobre sus relaciones interpersonales, lo cual, alegadamente, le causó daños estimados en $1,500,000.00.

sumaria, sosteniendo que los alegados actos de agresión anteriores al 24 de noviembre de 1996 estaban prescritos. El 20 de abril de 1999, la Sra. Santiago se opuso a la moción alegando, en lo aquí pertinente, que existía una controversia sustancial en torno a los hechos y que existían elementos subjetivos, específicamente que ésta alegadamente sufría del síndrome de mujer maltratada, lo cual impedía dictar sentencia sumaria y disponer así de la reclamación. Adujo, además, como fundamento para la improcedencia de la solicitud de sentencia sumaria parcial, que no se había concluido el descubrimiento de prueba, pues no se había logrado deponer al Sr. Ríos, colocándola en desventaja para oponerse a la moción.

El tribunal de instancia luego de señalar y celebrar una vista, en la que escuchó argumentos orales de las partes, emitió una sentencia sumaria parcial, en la cual acogió los planteamientos de la parte demandada, sosteniendo que procedía la emisión de la misma ya que los alegados actos de agresión, anteriores al 24 de noviembre de 1996, habían prescrito. Entendió que, bajo la teoría cognoscitiva del daño y en cuanto a los daños sucesivos, el término prescriptivo empezó a correr a partir del primer momento en que ésta conoció los daños y podía anticipar la certidumbre de su ocurrencia, lo cual determinó que fue a partir del primer incidente ocurrido en febrero de 1996[3].

---

[3] Toma esta fecha como punto de partida porque, según una deposición, la Sra. Santiago admitió que reconoció que el Sr.

**El foro primario rechazó el argumento de la Sra. Santiago en cuanto a que los términos prescriptivos nunca comenzaron a decursar, por ésta alegadamente sufrir del síndrome de mujer maltratada, resolviendo que la jurisprudencia no reconoce este síndrome como una defensa independiente y absoluta, sino como parte de la prueba admisible para probar los elementos de defensa propia en casos criminales en donde la víctima de maltrato comete algún acto de agresión en contra de su cónyuge o compañero consensual.**

**Inconforme con la sentencia sumaria parcial, la Sra. Santiago acudió al Tribunal de Circuito de Apelaciones, mediante recurso de certiorari, alegando, en síntesis, que incidió el foro primario al emitir la sentencia sumaria sin considerar sus alegaciones sobre el síndrome de mujer maltratada. De la misma manera, sostuvo que ella tenía derecho a completar su descubrimiento de prueba; que existía una controversia real y sustancial que impedía dictar sentencia sumaria, aún sobre el aspecto de prescripción.**

**Mediante sentencia a esos efectos, el tribunal apelativo intermedio <u>revocó</u> el dictamen recurrido. Concluyó que cuando se alega que la agraviada fue víctima del síndrome de mujer maltratada se tiene, sin entrar en los méritos de la alegación, que pasar prueba sobre dicho síndrome ya que el punto de partida del término prescriptivo para estos casos es el momento en que la víctima rompe con el ciclo que provocó tal condición y conoce que ha sufrido daños por tal conducta.**

Ríos la agredió y que el incidente le había ocasionado daños

Insatisfecho con esta determinación, Ríos Alonso acudió oportunamente ante este Tribunal vía certiorari. Sostuvo que incidió el Tribunal de Circuito de Apelaciones:

> ... al revocar al Tribunal de Instancia que desestimó parcialmente la demanda por estar prescrita ante admisiones de la propia demandante en su deposición[.]

> ... al tomar conocimiento de prueba sobre el alegado estado mental de (SIC) demandante a pesar de sus admisiones y de prueba considerada por el Tribunal de Primera Instancia[.]

> ... al concluir que la demandante tenía que completar un descubrimiento de prueba para determinar cuando tuvo conocimiento de los daños, al ser ese descubrimiento innecesario por sus admisiones[.]

**Expedimos** el recurso. En el día de hoy, **y aun cuando por fundamentos un tanto distintos**, confirmamos la sentencia emitida por el Tribunal de Circuito de Apelaciones. Somos del criterio que para arribar a la conclusión a la que llegamos, **resulta innecesario resolver** si la defensa del síndrome de mujer maltratada --usualmente utilizada en el ámbito penal-- es aplicable a la esfera civil.

I

Sabido es que la prescripción, institución de derecho sustantivo regulada por el Código Civil, constituye una forma de extinción de un derecho debido a la inercia en ejercer el mismo durante un tiempo determinado. **Galib Frangie** v. **El Vocero**, 138 D.P.R. 560, 566 (1995). Es una manera de conservar el equilibrio entre las relaciones jurídicas de las partes

_____

físicos y emocionales.

ya que provee una garantía sobre los derechos que les cobija.
Id.

Hemos descrito el propósito y los derechos amparados por la prescripción de la siguiente manera:

> La institución de la prescripción extintiva aspira a asegurar la estabilidad de la propiedad y la certidumbre de los demás derechos. Su innegable necesidad y valor responden a una <u>presunción legal de abandono, derivado del hecho del transcurso de un tiempo determinado sin reclamar un derecho</u>. Sin embargo, <u>ninguno de los intereses a los cuales responde es absoluto</u> --de un lado salvaguardar un derecho y del otro, darle carácter definido a la incertidumbre de una posible reclamación-- sino que <u>deben ser aquilatados en su justa proyección</u>. <u>Colón Prieto</u> v. <u>Géigel</u>, 115 D.P.R. 232, 243 (1984). (Citas omitidas y énfasis suplido.)

Conforme lo dispuesto en el Artículo 1868 del Código Civil, 31 L.P.R.A. Sec. 5298, que establece la teoría cognoscitiva del daño, <u>el período prescriptivo de una acción de daños y perjuicios comienza de decursar desde que el agraviado conoció el daño</u>. Por otra parte, el Artículo 1868 del Código Civil, 31 L.P.R.A. 5299, sostiene que: "El tiempo para la prescripción de toda clase de acciones, cuando no haya disposición especial que otra cosa determine, <u>se contará desde el día en que pudieran ejercitarse</u>". (Énfasis suplido.)

Atendiendo, <u>y atemperando</u>, estas disposiciones, hemos pautado una <u>trayectoria flexible</u> en cuanto al cómputo de dicho término. Para determinar cuándo comienza a decursar el término prescriptivo, <u>hemos precisado que el momento que se toma como verdadero punto de partida en una acción de daños y perjuicios lo es la fecha en que el perjudicado conoció del daño; quién fue el autor del mismo; y, además, desde que éste</u>

conoce los elementos necesarios para poder ejercitar efectivamente su causa de acción. Véase: Padín Espinosa v. Compañía de Fomento Industrial de PR, res. el 25 de febrero de 2000, 2000 TSPR 32. Martínez Rodríguez v. Brystol Myers Barceloneta, Inc., res. el 26 de enero de 1999, 99 TSPR 6; Vega Lozada v. J. Pérez y Cía., 135 D.P.R. 746 (1994); Toledo Maldonado v. Cartagena, D.P.R. (1992), Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347 (1989); Riley v. Pacheco, 119 D.P.R. 762 (1987); Colón Prieto v. Géigel, ante.

No podemos perder de perspectiva, por otro lado, que la prescripción no es una figura rígida sino que la misma admite ajustes judiciales, según sea requerido por las circunstancias particulares de los casos y la noción sobre lo que es justo. Véase: Maldonado v. Russe, res el 8 de febrero de 2001, 2001 JTS 17; Padín Espinosa v. Compañía de Fomento Industrial de P.R., ante; Vega Lozada v. J. Pérez y Cía., ante, 754. Es por ello que hemos establecido que aquella disposición sobre prescripción que exija a los demandantes instar su causa de acción antes de que éstos advengan en conocimiento de que tal acción le asiste viola su derecho al debido proceso de ley. Alicea v. Córdova, 117 D.P.R. 676 (1986).


**II**

Nuestra jurisprudencia admite y reconoce distintas categorías de daños[4]; entre éstos, se encuentran los "daños

---

[4] Entre las diversas categorías, se han reconocido los daños sucesivos; los daños continuados; los daños instantáneos; los daños permanentes; el daño cuya extensión y cuantía no se

sucesivos" y los "daños continuos o continuados". En <u>Galib</u>

<u>Frangie</u> v <u>El Vocero</u>, ante, citando al tratadista Herminio Brau

del Toro[5], definimos los "daños continuados" como

> "...aquellos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen también que también se conozca --por ser previsible-- el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de un daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto cierto."

Por otra parte, y distinto al "daño continuado"[6], los

"daños sucesivos" son "una secuencia de reconocimientos de

consecuencias lesivas por parte del perjudicado, las que se

producen y manifiestan periódicamente, o aun continuamente,

pero que se van conociendo en momentos distintos entre los

---

manifiesta de inmediato; el daño embrionario o latente que no se identifica hasta el transcurso de determinado tiempo; el daño que se oculta dolosamente por el autor; los daños múltiples y el daño desconocido que no viene a conocerse hasta tiempo después del acto culposo. <u>Rivera Encarnación</u> v. <u>E.L.A.</u>, 113 D.P.R. 383, 386 (1982).

[5] <u>Los Daños y Perjuicios Extracontractuales en Puerto Rico</u>, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, Cap. X, pág. 648.

[6] El Profesor Brau del Toro, ante, pág. 642-643, aclara: "En tanto que continuado deriva de 'continuo'y significa 'continuación e cosa, o acto u obra que se extiende sin interrupción', y así mismo tiene la acepción de 'todo compuesto de partes unidas entre sí' y 'aplicase a las cosas que tienen unión entre sí'; mientras los sucesivo se refiere a 'lo que sucede o sigue a otra cosa', y tiene el significado o sentido de cosas o actos u obras individuales o concretas que se suceden o siguen a otras, mediando intervalos finitos entre éstas; y en tanto que esta diferencia en rasgos o cualidades, cuando menos en el caso del supuesto que nos ocupa, no es meramente de grado sino de naturaleza y puede producir efectos jurídicos

que media un lapso de tiempo finito, sin que en momento alguno sean previsibles los daños subsiguientes, ni sea posible descubrirlos empleando diligencia razonable. Dicho en otras palabras, se trata de una secuencia de daños ciertos que se repiten --sin que sea necesario que sean idénticos en su naturaleza, grado, extensión y magnitud-- cuya repetición no es previsible en sentido jurídico ni son susceptibles de ser descubiertos empleando diligencia razonable." Brau del Toro, ante, 643. Nos informa el citado autor, además, que: "Cada uno de los daños unitarios que en conjunto constituyen los daños sucesivos presentes en dichos ejemplos constituye una unidad jurídica de "daño" que origina la correspondiente causa de acción resarcitoria. El término de prescripción para el ejercicio de cada una de ellas comienza a contar en el momento en que se reconoce el respectivo daño particular." Id., 644.

Es por ello que, distinto a lo que sucede con los "daños continuados", en los "daños sucesivos", cada reconocimiento de una lesión a causa de un acto culposo y/o negligente produce un daño distinto, generando así cada acto una causa de acción independiente.

### III

Aclarada la disyuntiva entre los "daños continuados" y "sucesivos", somos del criterio que una causa de acción fundamentada en unos incidentes repetidos, de maltrato físico

---

distintos ... estamos convencidos que daños continuados y daños

y emocional, que provocan los alegados daños y perjuicios reclamados <u>constituye una modalidad de daños continuados</u>. Este tipo de daño es provocado por una <u>serie de actos</u> cuyo <u>efecto neto</u> es precisamente mantener a la víctima en un <u>círculo vicioso de maltrato</u>. Es por ello que los actos de maltrato físico, emocional y sicológico componen un <u>cuadro de daños</u> que, <u>unidos</u>, van encadenándose para producir el <u>efecto neto</u> del maltrato y así, en dicha circunstancia, el último daño acaecido forma parte de ese ciclo de maltrato y <u>genera</u> la causa de acción por éste y por los actos de maltrato anteriores componentes del referido <u>patrón</u> de violencia. <u>En dichos casos, para determinar que la reclamación no está prescrita, el acto generador de la causa de acción tiene que haber ocurrido dentro del año que precedió la radicación de la demanda</u>.

Utilizando como norte estos preceptos, forzoso resulta concluir que lo determinante para la dilucidación del caso que hoy ocupa nuestra atención reside, <u>precisamente</u>, en el hecho de que la aquí perjudicada alega que ella fue víctima de un <u>patrón de maltrato</u>, físico y sicológico, durante un período de tiempo.[7] <u>Sin entrar en los méritos de dicha</u>

---

sucesivos constituyen dos categorías distintas de daños."

[7] "El 'síndrome de mujer maltratada' se define como el conjunto de características específicas y los efectos del maltrato o abuso en la mujer maltratada. <u>No toda mujer maltratada padece el síndrome, sino sólo aquéllas que son incapaces de responder de forma efectiva a los episodios de violencia por parte de su pareja, sintiéndose de ese modo atrapadas en dicha situación</u>." Dr. Ruth E. Ortega-Vélez, *Sobre... Violencia Doméstica*, San Juan, Ediciones Cisco, 1998, 36-37. La mujer maltratada, propiamente dicho, "ha sido definido 'como aquella mujer que

**alegación, la misma impedía que se dictara sentencia sumaria.** Incidió el tribunal sentenciador al actuar como lo hizo y desestimar gran parte de la causa de acción antes de que terminara un descubrimiento de prueba, completo y adecuado, en torno al <u>hecho esencial</u> de si la perjudicada sufría de este patrón de maltrato y antes de que desfilara, en el juicio en su fondo, prueba pericial a esos efectos.

En el caso de marras, el tribunal de instancia le imprimió un criterio extremadamente objetivo al cómputo del término prescriptivo ya que sólo consideró la fecha en que, según una deposición, la agraviada alegadamente supo que el demandado le había causado un daño, considerando exclusivamente la fecha de los alegados actos de agresión. <u>Sin embargo, no consideró el patrón de conducta de daño emocional o sicológico alegado en la causa de acción.</u>

## IV

Sabido es que únicamente procede que se dicte sentencia sumaria cuando de los documentos no refutados, esto es, de las alegaciones, declaraciones juradas, deposiciones, contestaciones a interrogatorios, admisiones u otros documentos complementarios, surge que no existe una controversia real o sustancial de hecho material alguno, y

---

permanece en una relación en la cual su pareja la agrede de forma sistemática y repetitiva'." Id., 25-26. <u>El síndrome de mujer maltratada se ha utilizado mayormente para evaluar si la acusada actuó legítimamente en defensa propia en casos criminales. Es una manera de explicar al cuadro emocional de la mujer que, luego de sufrir y vivir bajo el maltrato, agrede, mutila o mata a su pareja agresor</u>.

como cuestión de derecho procede dictarse. [8] Es norma reiterada por este Tribunal que la sentencia sumaria es un mecanismo procesal discrecional y extraordinario cuyo propósito es proveer una solución justa, rápida y económica a los litigios. Pilot Life v. Crespo Martínez, 136 D.P.R. 624, 632 (1994); PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 911-912 (1994).

Sólo procede dictarla, sin embargo, cuando claramente se desprende que la causa de acción no expone controversias genuinas de hechos materiales por lo que la celebración de un juicio en su fondo resulta ser una dilación innecesaria a la resolución del caso, pues sólo le compete al juzgador aplicar el derecho a la situación de hechos incontrovertibles ante sí. Id.; Caquías v. Asoc. Res. Mansiones de Río Piedras, 134 D.P.R. 181, 216 (1993). Claro está, el fin perseguido, la solución y tramitación rápida de los casos por la vía sumaria, está supeditado al principio de alcanzar una decisión justa. García Rivera v. Enríquez Marín, res. el 2 de febrero de 2001, 2001 TSPR 12; Cuadrado Lugo v. Santiago, ante, 279.

Es por ello que se ha señalado que si quien solicita la sentencia sumaria, esto es, la parte promovente de dicha sentencia, no ha establecido su derecho con claridad o cuando no existe una certeza sobre todos los hechos de la controversia, no procede dictar una sentencia sumaria. Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538,

---

[8] Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.

549 (1991); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 721 (1986).

Así, subrayamos que, si existe duda sobre los hechos o las controversias planteadas en las alegaciones, la solicitud de sentencia sumaria se debe resolver en contra del promovente. Id. También, en circunstancias particulares, es preciso aplazar la disposición de una moción de sentencia sumaria hasta que se concluya el proceso de descubrimiento de prueba para que la parte promovida tenga la oportunidad de refutarla debidamente. García Rivera v. Enríquez Marín, ante; Pérez Rosado v. El Vocero, res. el 2 de junio de 1999, 99 TSPR 154.

V

Ciertamente, casos como el que hoy ocupa nuestra atención, el cual comprende alegados actos de maltrato físico y emocional, que necesariamente presupone que el juzgador tendrá que considerar elementos subjetivos y de credibilidad, no son los más adecuados para resolver mediante una sentencia sumaria; aun más, cuando no se ha concluido el descubrimiento de prueba en el mismo.

De una lectura somera de los autos del presente caso se perfila, cuando menos, una controversia genuina de hechos que incide directamente sobre el punto de partida del período prescriptivo. Según hemos esbozado, la tendencia liberal sobre la prescripción de las acciones toma en cuenta elementos

**subjetivos que infringen, no sólo en el comienzo de dicho**

**período, sino en el ejercicio efectivo de la causa de acción**.

Incidió el tribunal sentenciador al dictar sentencia

sumaria y desestimar todo lo ocurrido con anterioridad al

último acto de agresión por estimar que dichos actos estaban

prescritos **cuando no se determinó si la perjudicada sufría,**

**como alega, de un patrón de maltrato físico y emocional, lo**

**cual posiblemente le impedía ejercer efectivamente su causa**

**de acción y conocer el daño cierto que activa el término en**

**los daños continuados**.

A tenor con la doctrina de los daños continuados

correspondiente a las acciones donde cada acto de violencia,

tanto físico como emocional, forma parte de un patrón, ambiente

o ciclo de maltrato e intimidación, el último incidente de

maltrato, cuando la víctima rompe con el ciclo de maltrato y

reconoce que ha sufrido un daño cierto, es el que activa la causa

de acción y, en consecuencia, constituye el momento a partir

del cual puede ejecutarse la misma. Véase: Galib Frangie, ante.

Resolver de otra manera, como pretende el peticionario,

y tomar cada acto de agresión de manera aislada o por separado,

sin tomar en consideración la alegada violencia sicológica[9], es

---

[9] "La violencia sicológica no se plasma en golpes, laceraciones, heridas o mutilación corporal, sino de ataques a la autoestima, a la dignidad e integridad de una mujer cuando 'se le humilla, menosprecia e insulta diariamente, cuando se le amenaza con retirarle afecto, sostén económico, acceso a una alimentación adecuada, hacerle daño o quitarle los hijos o peor aún, cuando se amenaza sistemáticamente con arrancarle la vida', propiciando de esta manera un sentido de inseguridad en sí misma que la mantiene presa ante una figura totalitaria que logra su sumisión mediante el uso del temor y terror sistemática." Dra. Ortega-Vélez, ante, 27.

frustrar este tipo de reclamación. Se puede colegir lo oneroso que sería para una agraviada, víctima de maltrato, una postura que requiera de ésta ejercer su causa de acción, o algún acto que interrumpa el término, cuando la situación que padece, esto es, su estado sicológico, no sólo le impide reconocer que ha sufrido un daño cierto sino que tampoco le permite reconocer todos los elementos necesarios para poder ejercer dicha causa de acción. Véase: Padín Espinosa, ante.

> **Como bien señala la Lcda. Ixa López Palau:**
>
> > **Los efectos sicológicos de la violencia masculina, ya sea física o emocional, suceden en una dimensión del ser humano que no está al alcance literal de nuestras manos o nuestros ojos. Los efectos de la subestimación y el maltrato no necesariamente dejan huellas que puedan verse, pero se proyectan en el comportamiento, los sentimientos, la productividad, el nivel de participación, las decisiones, el estado de ánimo, la autoimagen, la salud emocional y física, la calidad de vida que disfruta, o padece una mujer.**
> >
> > **El maltrato sicológico es el más común de todos los tipos de maltrato, y uno que infiere a la mujer no sólo su pareja, sino cualquier extraño, la familia o la sociedad. Los efectos son acumulativos; una instancia refuerza las otras, por lo que se confunden sus consecuencias inmediatas con las pasadas. Mientras más violencia experimenta una víctima, son más las perturbaciones sicológicas que puede sufrir como consecuencia.** *Violencia contra la Mujer*, San Juan, Ediciones Lego, 1999, 128.

**El maltrato en casos de violencia doméstica se compone, de ordinario, de un daño encadenado y cíclico que forma un patrón de conducta. En otras palabras, y por su propia naturaleza, este tipo de reclamación, esto es, daños por el maltrato físico y emocional durante una relación consensual, ordinariamente presenta una serie de actos que, en conjunto,**

producen el efecto dañino motivo del resarcimiento invocado. Es la consecuencia dañina de dichos actos conjuntos por lo que la perjudicada pretende que se le compense.

No cabe duda que en el caso de marras es indispensable que el tribunal de instancia resuelva si la Sra. Santiago fue víctima de un patrón de maltrato y si ella estaba, o no, impedida, desde un punto de vista sicológico, de reconocer un daño concreto en cada acto de violencia del cual fue objeto; únicamente, entonces, podrá determinar si los daños alegados son daños continuados, o, por el contrario, si son actos aislados, en cuyo caso, algunos incidentes estarían prescritos. Para ello es imprescindible que se complete el descubrimiento de prueba y se celebre una vista en su fondo en la cual se reciba prueba pericial al respecto.

En mérito de lo anterior, y aun cuando por distintos fundamentos, procede la confirmación de la sentencia emitida por el Tribunal de Circuito de Apelaciones; devolviéndose el caso al foro de instancia para la continuación de procedimientos ulteriores, consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


                    FRANCISCO REBOLLO LOPEZ
                    Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Daisy Annette Santiago Rivera

    Demandante-recurrida

        vs.                    CC-2000-540       CERTIORARI

Osvaldo Ríos Alonso

    Demandado-peticionario

SENTENCIA

San Juan, Puerto Rico, a 7 de febrero de 2002

**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones; devolviéndose el caso al foro de instancia para la continuación de procedimientos ulteriores, consistentes con lo aquí resuelto.**

**Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Rivera Pérez se inhibió.**

**Carmen E. Cruz Rivera**
**Secretaria del Tribunal Supremo Interina**