Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta.
Disiento de la determinación que toma hoy una mayoría de este Tribunal de desestimar la reclamación de daños por hostigamiento sexual al entender que está prescrita. El resultado al que llega la Mayoría del Tribunal en el presente caso es contraria a la tendencia liberal sobre la prescripción de las acciones que hemos establecido en nuestra jurisprudencia, la cual requiere que consideremos los ele *230 mentos subjetivos que afectan el dies a quo y el ejercicio efectivo de una acción judicial. Véase Santiago v. Ríos Alonso, 156 D.P.R. 181, 195 (2002).
El hostigamiento por ambiente hostil se produce cuando la conducta hacia una persona por razón de su sexo interfiere irrazonablemente con el desempeño de su trabajo o crea un “ambiente intimidante, hostil u ofensivo”. Rodríguez Meléndez v. Sup. Amigo, Inc., 126 D.P.R. 117, 132 (1990). Esta vertiente del hostigamiento sexual se caracteriza por la multiplicidad de actos que la configura. In re Robles Sanabria, 151 D.P.R. 483, 500 (2000). La modalidad del ambiente hostil requiere que acaezcan varios actos discriminatorios repetidos que constituyan un patrón de conducta hostigante. Cada uno de estos actos, unidos entre sí o en conjunto, produce el efecto intimidante y hostil en la persona perjudicada. En Santiago v. Ríos Alonso, supra, pág. 192, resolvimos que una causa de acción fundamentada en unos incidentes repetidos que componen un cuadro de daños físicos y emocionales constituye una modalidad de daños continuados. Por esta razón, entiendo que los daños producidos por hostigamiento sexual debido a un ambiente hostil están enmarcados dentro de esta categoría.
Anteriormente, citando al tratadista Herminio Brau del Toro, hemos definido los daños continuados como “aqu[e]llos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas [,] sin interrupción, unidas entre sí, las cuales al ser conocidas hacen también que se conozca —por ser previsible— el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de un daño actual (aquel que ya ha acaecido) y de daño futuro previsible y por tanto cierto”. Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560, 575 (1995). Véanse: Santiago v. Ríos Alonso, supra, pág. 190; Nazario v. E.L.A., 159 D.P.R. 799, 806 (2003). Véase, tam *231 bién, H.M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, Cap. X, pág. 648.
La doctrina civilista y nuestra jurisprudencia han señalado que una acción por daños continuados se renueva día a día hasta que la causa que los genera cesa. Arcelay v. Sánchez, 77 D.P.R. 824, 837-839 (1955); Capella v. Carreras, 57 D.P.R. 258, 266 (1940). A su vez, en Santiago v. Ríos Alonso, supra, pág. 195, en el contexto de violencia doméstica, establecimos que el momento a partir del cual comienza a transcurrir el término prescriptivo de la acción en daños es cuando la víctima de un ambiente de maltrato e intimidación rompe con el ciclo de barbarie, y cesa, por lo tanto, la conducta represiva hacia ésta. Por consiguiente, es forzoso concluir, al igual que lo hace la opinión de conformidad, que el plazo prescriptivo para la acción que aquí nos ocupa comienza a transcurrir cuando se produce el resultado definitivo del daño o hasta que se verifique el último de los actos. Véanse: Nazario v. E.L.A., supra, pág. 11; Santiago v. Ríos Alonso, supra.
Al aplicar la doctrina antes explicada, tanto la Mayoría de este Tribunal como la opinión de conformidad resuelven revocar al Tribunal de Apelaciones y desestimar la acción de la demandante por prescripción. En particular, entiende la opinión de conformidad que la exposición de la señora Umpierre Biascoechea a un ambiente hostil cesó el 4 de febrero de 2000, fecha cuando dejó de presentarse al trabajo. Expresa que es desde entonces que finalizaron los actos del alegado hostigamiento. No estoy de acuerdo.
En los hechos del presente caso debe tenerse en cuenta que si bien la señora Umpierre Biascoechea dejó de acudir a su trabajo el 4 de febrero de 2000, no presentó su renuncia en dicha fecha. No es hasta el 12 ó 13 de marzo de 2000,(1) después de reunirse con la gerencia del banco y de *232 ser diagnosticada con depresión severa, que la demandante se siente compelida a renunciar a su puesto. Ese día de su renuncia como empleada del banco debe ser el punto de partida para el cómputo de la prescripción de la acción en daños.
No podemos concluir que el que la perjudicada no haya asistido a su trabajo por un tiempo antes de renunciar finalizó, de por sí, el patrón de hostigamiento al que alegadamente era sometida. Hemos señalado que el hostigamiento por ambiente hostil interfiere irrazonablemente con el desempeño del trabajo de la víctima y causa en ésta ansiedad, debilita su autoestima y su confianza. Rodríguez Meléndez v. Sup. Amigo, Inc., supra, pág. 132. Por eso, el ambiente hostil no se experimenta sólo con la cercanía física al hostigador y en la incomodidad próxima del entorno laboral. Mientras perdure la relación laboral, la ausencia física de la peijudicada de su lugar de trabajo no suprime los efectos del hostigamiento en su estado anímico y emocional ni altera la ansiedad producto del ambiente intimidante y hostil del lugar de trabajo al cual debe regresar. El ambiente hostil creado por el patrón de conducta hostigante no está delimitado por un espacio físico determinado, sino que se encuentra también en un estado mental y emocional de humillación e intimidación que trasciende el lugar de trabajo. Ante esta realidad, la ausencia de la perjudicada de su lugar de trabajo es un intento suyo de minimizar los efectos nocivos del hostigamiento, pero no finaliza de forma automática el ambiente hostil que, según las alegaciones, la afectaba y envilecía las condiciones de su empleo.
Como señalé, tanto la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. see. 1545 et seq.) como nuestra jurispru *233 dencia establecen que una de las manifestaciones del hostigamiento sexual es la de interferir de manera irrazonable con el desempeño del trabajo o afectar impermisiblemente las condiciones de empleo. Art. 3 de la Ley Núm. 17, supra, 29 L.P.R.A. sec. 155b; In re Robles Sanabria, supra, pág. 500; Rodríguez Meléndez v. Sup. Amigo, Inc., supra, pág. 132. No debemos pasar por alto que la señora Umpierre Biascoechea vio sus condiciones de empleo afectadas de modo tan significativo e irrazonable que tuvo que ausentarse de su trabajo. Su decisión de alejarse de su lugar de empleo no fue caprichosa ni pueril; más bien fue provocada directamente por el hostigamiento que alega haber sufrido constantemente y por el ambiente hostil que contaminaba su entorno laboral. La renuncia eventual de la señora Umpierre Biascoechea fue para ella la solución más efectiva para cesar la conducta hostigante y poder desprenderse totalmente del ambiente hostil que sufría tanto en su lugar de trabajo como en su estado anímico frente a éste. Por esto, no es hasta que se vio obligada a renunciar a su trabajo que se concretó el “resultado definitivo” del daño al que alude la opinión de conformidad. Dado que el daño definitivo (que incluye la pérdida de su trabajo) se produjo en un momento posterior al último acto de hostigamiento sexual alegado (que fue lo que provocó la ausencia inicial), es la fecha de la renuncia la determinante para el cómputo de la prescripción.
Por último, es necesario destacar otra razón de peso para concluir que la fecha de renuncia es la que determina el dies a quo en el caso de autos. Me refiero a la obligación del patrono de evitar el hostigamiento, que no cesó respecto a la señora Umpierre Biascoechea cuando ella se ausentó de su trabajo.
La Ley Núm. 17, supra, tiene dos propósitos fundamentales: prohibir terminantemente el hostigamiento sexual en el empleo, por éste ser una forma de discrimen por razón de sexo que viola la dignidad humana, e imponer las *234 responsabilidades pertinentes en caso de incumplimiento. Véase Art. 1 de la Ley Núm. 17, supra, 29 L.P.R.A. sec. 155. Así, la ley establece expresamente el deber de todo patrono de “prevenir, desalentar y evitar el hostigamiento sexual en el empleo” y garantizar que los empleados “puedan trabajar con seguridad y dignidad”. Art. 10 de la Ley Núm. 17, supra, 29 L.P.R.A. sec. 155i. La violación por parte del patrono a su deber de mantener el centro de trabajo libre de hostigamiento sexual e intimidación contribuye a la manifestación del ambiente hostil, y es el fundamento de su responsabilidad por los daños causados a la víctima del hostigamiento. A estos efectos, la ley responsabiliza al patrono no sólo por sus propias acciones sino también por las actuaciones hostigantes de sus agentes o supervisores. Véanse los Art. 5 y 6 de la Ley Núm. 17, supra, 29 L.P.R.A. secs. 155d-155e. El lenguaje de la Ley Núm. 17 nos exige concluir que el deber de todo patrono de asegurarle a cada uno de sus empleados unas condiciones de trabajo libre de hostigamiento sexual es continuo e ineludible. Como bien señaló el Juez Asociado Señor Negrón García en Sánchez et al. v. A.E.E., 142 D.P.R. 880, 886 (1997), opinión concurrente, “[este deber p]rosigue, en cuanto de cada empleado en particular, hasta su último día de trabajo”.
El último día de trabajo de la señora Umpierre Biascoechea no fue el día en que huyó de un centro de empleo que, según alega, estaba cargado de intimidación, hostilidad y humillación. Su último día de trabajo fue el día de su renuncia. El deber del Banco de mantener un centro de trabajo libre de hostigamiento sexual e intimidación se ex-tendió, respecto a las alegaciones de la señora Umpierre Biascoechea, hasta ese día. Interpretar que la obligación del patrono fue interrumpida por la ausencia de la perjudicada, sería dar al traste con la máxima constitucional que exige la inviolabilidad de la dignidad del ser humano y con nuestra política pública imperante que busca erradicar el hostigamiento sexual en el empleo. El banco tenía la *235 responsabilidad de cumplir con su deber patronal para con su empleada hasta el día en que ésta dejó efectivamente de serlo. Es hasta ese momento que el patrono pudo tomar las medidas necesarias para establecer unas condiciones de empleo que permitieran el regreso de la señora Umpierre Biascoechea a un ambiente laboral libre de hostigamiento e intimidación. Entre el último día de asistencia de la demandante a su trabajo y su renuncia, la obligación del patrono conforme a la Ley Núm. 17, supra, estaba vigente. Por eso, su posible responsabilidad ante el daño alegado por la señora Umpierre Biascoechea no cesó durante este periodo. El que el patrono refiriese a la señora Umpierre Biascoechea al Fondo del Seguro del Estado no fue una medida apropiada ni suficiente para corregir la alegada situación de hostigamiento.
Por todo lo anterior, devolvería el caso al Tribunal de Primera Instancia para que continuaran los procedimientos y resolviera la controversia en cuanto a la fecha exacta cuando se notificó la renuncia de la señora Umpierre Biascoechea al Banco Popular.(2) La solución a esta controversia de hecho determinaría si la reclamación por daños instada en el caso de autos estaba prescrita. Por ser distinto el resultado al que llega una mayoría de este Tribunal, disiento.

 Al examinar el expediente del caso se desprende que existe una controversia de hecho en cuanto a la fecha exacta en la que la señora Umpierre Biascoechea *232 notificó su carta de renuncia al Banco Popular. La carta está fechada 12 de marzo de 2000, mientras que en algunos documentos del patrono se señala que la carta fue entregada el 13 de marzo de 2000. Contrario a la opinión de conformidad, y según explicaré más adelante, entiendo que la solución a esta controversia es determinante para poder establecer el dies a quo en el caso de autos.

 Véase ese. 1.