TORRUELLA, Circuit Judge
(Dissenting in part and Concurring in part).
This appeal presents a nebulous issue of Puerto Rico law, begat by conflicting local jurisprudence and by the absence of a definitive resolution by Puerto Rico’s highest court. That issue pertains to the date of accrual under Puerto Rico law for a relative tort claim under Article 1802 that is “derivative of’ and “contingent upon” a principal plaintiffs discrimination claim. As “the existing case law does not provide sufficient guidance to allow us reasonably to predict” how the Puerto Rico Supreme Court would resolve this issue, In re Engage, Inc., 544 F.3d 50, 57 (1st Cir.2008), I am firmly convinced that this appeal pres *324 ents precisely the type of question that the certification process was designed to address. See Muñiz-Oliveras v. Stiefel Labs., Inc., 496 F.3d 29, 39-40 (1st Cir. 2007). Because I conclude that its resolution should thus come from the Supreme Court of Puerto Rico, I respectfully dissent.
Our intervention under the circumstances is not only risky (and perhaps, even presumptuous) but also unwise and impolitic, considering the procedures that are readily available to resolve this conundrum. See P.R. Laws Ann. tit. 32, app. III, Rule 53.1(f); VanHaaren v. State Farm Mut. Auto. Ins., Co., 989 F.2d 1, 3 (1st Cir.1993) (“Absent controlling state court precedent, a federal court sitting in diversity may certify a state law issue to the state’s highest court....”). By following this avenue, a court can readily clarify uncertain issues of state law, such as we have before us. Moreover, the certification process is precisely fitted to this case because the issue before us involves nuances and concepts peculiar to Puerto Rico’s civil law system which are foreign to common law courts.[1] Thus, we should pause, take an intellectual deep breath, and allow Puerto Rico’s Supreme Court, whose expertise on the subject of its own legál culture is unquestionably superior to ours, to first provide an authoritative answer on this important and complicated question.
Furthermore, the circumstances of this case present a quintessential example of the conditions that render certification proper under the law of this circuit. There is clearly an absence of “controlling precedent” from the Puerto Rico Supreme Court on this issue. See Engage, 544 F.3d at 53. In fact, the majority opinion acknowledges that “the Puerto Rico Supreme Court has not spoken directly to the precise question that confronts us.” (Maj. Op. at 318). It is true that “in the absence of controlling precedent, certification would [nevertheless] be inappropriate where state law is sufficiently clear to allow us to predict its course.” Engage, 544 F.3d at 53; see also Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 25-26 (explaining that “[a]bsent controlling state precedent, a federal court sitting in diversity may certify a state law issue to the state’s highest court, or undertake its prediction when the course [the] state courts would take is reasonably clear.” (quotations omitted and emphasis added)). However, this is hardly the case in which the course of Puerto Rico law can reasonably *325 be predicted, given that the only cases precisely on point are two decisions from Puerto Rico’s intermediate appeals court whose ratio decidendi directly conflict with one another, and which point to completely different outcomes. Compare Gonzalez Vázquez, at 5[2] (a family member’s Article 1802 contingent claim does not accrue and its limitation period does not start to run until it is “determined if there was a discrimination [against the primary plaintiff] as a matter of fact and law.”) with Santos Cabrera v. R.J. Reynolds Tobacco Co., Civ. No. DPE 2004-0943, 2005 WL 3720002, at *8 (P.R. Cir. Dec. 15, 2005) (a family member’s Article 1802 contingent claim accrues on the date the relative becomes aware of the defendant’s allegedly discriminatory conduct against the primary plaintiff). In light of the squarely conflicting authority, it is puzzling how the majority found sufficient clarity to predict what course Puerto Rico’s Supreme Court would take if it were faced with this issue.[3]
In any event, if I were to undertake a prediction, I would conclude that the Supreme Court would likely go on a different course than that assumed by the majority in the present appeal. This is because I find that the appeals court holding in González Vázquez, the more recent of the two relevant appeals court decisions, comports more closely with the continuum of binding Puerto Rico Supreme Court decisions preceding it, regarding the proper application of the statutes of limitations to contingent causes of action. I am thus doubly persuaded that we should seek that court’s advice before embarking on what could very well be an erroneous prediction of Puerto Rican law.[4]
The holding in González Vázquez can best be understood by reading it within the context of the rest of the opinion. In that case, the primary plaintiff was terminated from her position at Quest in August 2002, after which time she exhausted ad *326 ministrative procedures with the Commonwealth’s Anti-Discrimination Unit, prior to filing, on August 18, 2003, a judicial employment discrimination claim under Law 100, which was accompanied by her daughter’s contingent claim under Article 1802. See González Vázquez, certified translation at 1-2. Quest alleged that the daughter’s action, filed more than one year after her mother’s termination, had prescribed, but the Appeals Court disagreed. Id. at 2, 9. It held that the statute of limitation with respect to the derivative action under Article 1802, “start[ed] to count as of the moment in which the action can be exercised, that is, as of the moment that it is resolved as a matter of fact and of law that [her mother] was discriminated [against].” Id. at 9 (emphasis added). Applying its holding, the court found that the relative’s derivative cause of action under Article 1802 had not prescribed.[5] Id.
In support of its decision, the González Vázquez panel relied on Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1, 14 (1994), the Puerto Rico Supreme Court decision creating the very cause of action that is the subject of the present dispute. See Santini Rivera, 137 P.R. Dec. at 14 (holding that “relatives of an employee who has been a victim of an Act No. 100 discriminatory treatment ... have a cause of action under [Article] 1802 to be compensated for the harm resulting from said discrimination.” (quoting official translation at 13)). In recognizing the relatives’ Art. 1802 action, the Supreme Court explicitly stated in Santini that “[i]n said circumstances, the relatives will recover damages once said discrimination [under Law 100] is established.” Id. (emphasis added & quoting official translation at 13). The appeals court also relied on the Supreme Court’s analysis of Santini in Maldonado v. Banco Central Corp., 138 P.R. Dec. 268, 276 (1995), in which the Supreme Court indicated that the action of the relatives is “separate and contingent” to that of the discriminated employee.[6] González *327 Vázquez, at 7. It explained that the relatives’ action is “separate because it is not governed by the provisions of Law 100, but of Art. 1802,” and contingent “since if the employee does not prevail, his/her consort ... cannot claim for a discrimination that was not proven.” Id. (quoting Maldonado, 138 P.R. Dec. at 276).
Recognizing the relative’s argument that her cause of action is a “contingent” one, “which cannot be exercised until the claim of Law 100 is adjudicated,” the appeals court said:
Pursuant to what is provided in Art. 1868 of the Civil Code, 31 L.P.R.A. sec. 5298, which establishes the cognoscitive theory of damage, the prescriptive period of an action for damages commences to count when the aggrieved knew of the damage. On the other hand, Art. 1869 of the Civil Code, 31 L.P.R.A. sec. 5299, sustains that: “The time for the prescription of all kinds of action, when there is no special provision that provides otherwise, will commence to count as of the day in which they could have been exercised.”
González Vázquez, at 8 (emphasis added) (quoting Santiago Rivera v. Ríos Alonso, 156 P.R. Dec. 181, 188 (2002)). Relying on this language, the appeals court noted that the true point at which a cause of action accrues “is the date in which the aggrieved knew of the damage; who was the author of the same; and also, since he/she knows the necessary elements to be able to effectively exercise his/her cause of action.” Id.[7] But the court continued, noting that it could not lose sight of the perspective “that prescription is not a rigid figure but it admits judicial adjustments, as required by the particular circumstances of the cases and the notion as to what is fair.” Id. It then cited the Supreme Court decision in Alicea v. Córdova for the proposition that “the provisions regarding prescription that require that the plaintiffs file their cause of action before they have a right to said action, violate their right to due process.” Id. (citing 117 P.R. Dec. 676 (1986)).
Relying on Maldonado, the appeals court reasoned that “in order for [the relative] to be able to file her action for damages ... she has to wait for it to be determined if there was ... discrimination as a matter of fact and of law; because the relative ‘cannot claim a discrimination that is not proven.’ ” Id. It concluded that because the [relative’s] actions “depends on the establishment of the illegal act, Art. 1869 of the Code, as applied in Santiago v. Ríos Alonso, requires that the term start to count as of the moment in which the action can be exercised, that is, as of the moment that it is resolved as a matter of fact and of law that [the primary plaintiff] was discriminated.” Id. at 9. It thus concluded that the daughter’s action had not prescribed. Id. The application of González Vázquez to this case would mean that, since the primary plaintiffs claim has not yet been adjudicated, the relative plaintiffs’ contingent claims have not even accrued, let alone prescribed.[8]
Although in my opinion, the holding in González Vázquez, firmly grounded in binding Puerto Rico Supreme Court prece *328 dent, could very well be dispositive of the appeal before us, in view of the conflicting jurisprudence that exists among Puerto Rico’s appeals courts, I hesitate to modify my initial view favoring certification to the Supreme Court of Puerto Rico. That circumstance makes it singularly tactful that we refer the matter to that court as the appropriate forum for resolving such intramural disputes. It is also that court that should properly deal with the policy considerations raised by the majority. Muñiz Oliveras, 496 F.3d at 39-40 (“[Qjuestions of local policy ... are best addressed by the Supreme Court of Puerto Rico in the first instance.”).[9]
To conclude, it has been said that in diversity cases, “the federal judge must often trade his judicial robes for the garb of a prophet.” Smith, supra, at 2133 n. 30 (quotation marks omitted). But in circumstances such as these, where our prophetic powers are at a nadir due to the existence of directly conflicting non-binding local precedent, where a wrong prediction may needlessly extinguish the rights of a party, and where a mechanism for finding out what the local court would actually do is readily available, I, unlike my colleagues, am reluctant to engage in prophesy. Thus, I respectfully dissent from the majority’s affirmance of the district court’s dismissal of the adult relatives’ claims and urge that this question be certified to the Supreme Court of Puerto Rico.
I join the majority opinion to the extent that it reverses the district court’s dismissal of the minor relative’s claim as time-barred, as Puerto Rico law clearly tolls the statute of limitations until a child reaches the age of majority. See P.R. Laws Ann. tit. 32, § 254(a). In all other respects, for the reasons herein stated, I respectfully dissent.

. See Rodríguez-Narváez v. Nazario, 895 F.2d 38, 43 (1st Cir.1990) ("[T]he courts of Puerto Rico have consistently observed that civil law tradition, and not common law, governs the rules applicable to limitation periods and tolling provisions under Puerto Rican law.”); Guevara v. Dorsey Labs., Div. of Sandoz, Inc., 845 F.2d 364, 366 (1st Cir.1988) ("The Supreme Court of Puerto Rico has made clear that the common law of the United States is not controlling, when filling gaps in the civil law system.” (citation omitted)); Vega Lozada v. J. Pérez & Compañía., Inc., 135 P.R. Dec. 746, 755 (1994) (certified translation) (noting that Puerto Rico has "adopted the liberal civil-law trend on the statute of limitation of actions for damages”). For an example of the different approaches compare, e.g., Normandin v. Levine, 621 A.2d 713, 716 (R.I. 1993) (although claim for loss of consortium is "derivative in nature and inextricably linked to the injured spouse’s action,” "each spouse maintains an entirely unique cause of action under the law and the assertion of one spouse’s right within the statutory period of limitations will not excuse the failure of the other spouse to assert within the statute of limitations his or her own separate right.” (internal citation omitted)) with González Vázquez v. Quest Diagnostic Inc., Civ. No. K DP 2004-0460, 2007 WL 1578045 (P.R. Cir. Apr. 30, 2007) (a family member’s contingent claim does not accrue and its limitation period does not start to run until it is determined if there was discrimination against the primary plaintiff as a matter of fact and law).

. As no official translation of this Spanish language opinion is available, all quotations are from and citations are to the certified translation submitted by the parties.

. Other conditions we have deemed relevant to certification are present in this case as well. This question is clearly "determinative of the pending cause of action,” Engage, 544 F.3d at 52, in that the date of accrual determines whether the relative plaintiffs’ contingent tort claims, filed more than one year after the primary’s plaintiff’s demotion, are dismissed as time-barred or permitted to continue. Moreover, this is not a case in which the "policy arguments line up solely behind one solution,” id. at 57, given the conflicting interests in fairness, finality, judicial economy and federalism involved. See also Muñiz-Olivari, 496 F.3d at 39-40 (certifying novel Puerto Rico law question on the ground that “questions of local policy, ... are best addressed by the Supreme Court of Puerto Rico in the first instance.”).

. "The problem, of course, is that when a federal court 'gets it wrong,’ the litigants are denied the proper application of the law.” Jessica Smith, Avoiding Prognostication & Promoting Federalism: The Need for an Inter-Jurisdictional Certification Procedure in North Carolina, 77 N.C. L.Rev. 2123, 2134 (1999). The majority disputes the validity of this concern, in part, because the parties chose a federal forum and did not request certification. (Maj. Op. at 323 n. 6). But in my view, a party’s entitlement to the "proper application of the law” remains intact regardless of the forum he elects, and our discretion to certify, in the interest of such "proper application” is not affected by a party’s failure to request certification. See Engage, 544 F.3d at 57 n. 10 (noting that “this court maintains discretion to certify questions ... when a party fails to request certification in the court below, or even sua sponte”). Moreover, an erroneous application of the law has implications well beyond these parties, in that, "until the erroneous decision is corrected, non-parties [will] conform their behavior to an improper legal norm.” Smith, supra, at 2134. Thus, the reasons for certification extend beyond the interests of the relative-plaintiffs in this case.

. The majority attempts to discount the González Vázquez holding, that the relative’s contingent Article 1802 action does not "accrue” until discrimination against the primary (Law 100) plaintiff has been established, as "dicta.” We disagree. If anything, the case presents alternative holdings. This is because there was factual dispute as to the date of the mother's termination. Thus, the court concluded that had the termination taken place on August 16, 2002, as plaintiffs alleged, then given how weekends and holidays are counted, the daughter's claim, filed on August 18, 2003, within one-year of the termination for prescription purposes, was not time-barred. Id. at 5. However, acknowledging that Quest alleged the termination to have taken place on August 15, 2002, rendering the filing of the complaint to have taken place than one year from the date, the court continued with its analysis to ultimately hold that even if the complaint had not been filed within one year from the alleged acts of employment discrimination, the daughter’s contingent claims are nevertheless not time-barred. Id. at 9. In so concluding, the court explicitly held that the relative’s Article 1802 claim accrued and the prescription term did not start to run until the discrimination of the primary plaintiff was established. In any event, as neither González Vázquez nor Santos Cabrera are decisions of the Puerto Rico Supreme Court, whether dicta or not, they are both merely persuasive authority. See Fortini v. Murphy, 257 F.3d 39, 49 (1st Cir.2001).

. This is in keeping with the consistently expressed view of that court that the relative’s cause of action is a "contingent” cause of action, that is, that the discriminated employee’s relative has a cause of action under Article 1802 of the P.R. Civil Code that is contingent on the employee establishing his/her cause of action. See Maldonado, 138 P.R. Dec. at 276; Marcano-Rivera v. Pueblo Int'l, Inc., 232 F.3d 245, 258 n. 7 (1st Cir.2000); Baralt v. Nationwide Mut. Ins. Co., 183 F.Supp.2d 486, 488 (D.P.R.2002); see also Black’s Law Dictionary 31 (6th ed.1990) (defining the term "contingent claim” as "one which has not accrued and which is dependent on some future event that may never happen”).

. This reasoning is also consistent with Vega Lozada, in which the Supreme Court stated that in Puerto Rico an action "accrues” when the aggrieved party knew of the harm and could exercise his action. 135 P.R. Dec. at 754.

. The majority needlessly assumes that the González Vázquez rule would mean that the principal and derivative claim could never be joined in a single proceeding, as the former must be tried to a conclusion before the latter accrues. (Maj. Op. at 323). However, that assumption ignores the frequent practice of allowing technically unaccrued contingent claims, such as third party claims, to be accelerated and joined with the primary action:
A third-party claim is ordinarily proper even though the claim is contingent. In *328 deed, a third-party complaint is by its nature a contingent claim. Thus, a third-party action may be brought even though the third party defendant is only contingently liable ... In other words, although the right to recover from the third-party defendant does not accrue until after judgment or compromise and settlement, a third-party action against him or her can be maintained.
59 Am.Jur.2d Parties § 288 (2009) (citations omitted); see also Lehman v. Revolution Portfolio LLC, 166 F.3d 389 (1st Cir.1999) (holding that impleading a third-party defendant on theories of indemnification and contribution presented justiciable claims even though the claims were contingent upon the defendant being found liable to the plaintiff in the underlying suit); D'Onofrio Constr. Co. v. Recon Co., 255 F.2d 904 (1st Cir.1958) (same); Matter of M. Frenville Co., Inc., 744 F.2d 332, 337 (3d Cir.1984) (noting that claim for indemnity does not arise "until the prime obligation to pay has been established” but citing New York rule that "allows third-party actions to be commenced in certain circumstances before they are technically ripe, so that all parties may establish their rights and liabilities in one action”); Connors v. Suburban Propane Co., 916 F.Supp. 73 (D.N.H. 1996) (“[U]nder state contribution statutes that condition the cause of action upon discharge of common liability to plaintiff, [Fed. R.Civ.P. 14 can be used to accelerate the defendant's cause of action for contribution”).

. Though I would leave it to the Puerto Rico Supreme Court to weigh policy considerations, I cannot fail to comment upon the suggestion made by the majority, to the effect that the relatives may bring so-called "standalone” claims prior to the establishment of the principal discrimination. (Maj. Op. at 321). Were such a practice to become requisite for litigants in this area of the law, we could very well have the incongruous outcome of the relatives recovering on their derivative claims notwithstanding the discriminatee failing to do so in his/her principal suit. Can such an absurd legal outcome be seriously countenanced? I think the answer to this question is more self evident than the one that should be certified to the Supreme Court of Puerto Rico in the present case.