# 2007 DTA 74

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VII**

ALEXANDRA RODRÍGUEZ CRESPO
Recurrida-Querellante

v.

JAVIER ENRIQUE DÍAZ SANTIAGO
Peticionario-Querellado

Núm. KLCE-07-00489

San Juan, Puerto Rico, a 23 de mayo de 2007

Panel integrado por su Presidente, el Juez Rivera Martínez, el Juez Colón Birriel y la Juez Jiménez Velázquez

Jiménez Velázquez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

El señor Javier Enrique Díaz Santiago presenta el 5 de abril de 2007 un recurso de *certiorari* para que este foro apelativo revise la determinación judicial del Tribunal de Primera Instancia, Sala Municipal de Bayamón, mediante la cual se expide una orden de protección a favor de la señora Alexandra Rodríguez Crespo al amparo de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, y mejor conocida como la *"Ley para la Prevención e Intervención con la Violencia Doméstica"*, 8 L.P.R.A. sec. 601 *et seq.* (en adelante, Ley Núm. 54).

El señor Javier Enrique Díaz Santiago (en adelante, Díaz Santiago), es la parte peticionada-querellada ante el Tribunal de Primera Instancia, Sala de Investigaciones de Bayamón (en adelante, TPI), y contra quien van dirigidas las diversas prohibiciones contenidas en la Orden de Protección. Inconforme con dicha Orden de Protección, éste solicita que la misma se deje sin efecto, ya que, según su criterio, el TPI no tiene base alguna en los hechos probados para expedirla. La señora Alexandra Rodríguez Crespo (en adelante, Rodríguez Crespo), se opone a la revisión solicitada.

Con el beneficio de la comparecencia de ambas partes, incluyendo una transcripción de los procedimientos judiciales ante el TPI, y luego de haber expedido el recurso de *certiorari*, confirmamos la Orden de Protección expedida por el TPI el 13 de marzo de 2007.

**I**

**Relación de hechos**

La señora Rodríguez Crespo y el señor Díaz Santiago procrearon durante su relación consensual a la pequeña Camila S. Díaz Rodríguez, quien actualmente cuenta con seis (6) años de edad. Luego de terminada dicha relación sentimental, los alimentos en beneficio de la niña se fijan en el caso DAL-2002-0068 sobre alimentos en el Tribunal de Primera Instancia de Bayamón, Sala de Relaciones de Familia. En dicho caso se establece el plan de relaciones paterno-filiales, es decir, se aprueba con el aval de dicho tribunal, el modo y manera en que el padre se relacionaría con su hija. Como es natural, las relaciones entre ambos progenitores se torna problemática, tensa y disfuncional, luego de concluida la relación sentimental entre ambos. Así pues, el TPI, Sala de Relaciones de Familia, el 16 de noviembre de 2005 establece el plan de relaciones paterno-filiales por estipulación de las partes. Dicho plan, al momento de los hechos, dispone para que el padre se relacionara con su hija de sábado a las 9:00 de la mañana a domingo a las 6:00 de la tarde en fines de semanas alternos. También, por estipulación de las partes, el plan de relaciones paterno-filiales establece que fuese la señora madre del señor Díaz Santiago, quien fungiera como el recurso familiar para el recogido y/o entrega de la pequeña en el Burger King, restaurante de comida rápida de la Urbanización Rexville de Bayamón, durante los días en que éste habría de compartir con la

niña. Como la señora Rodríguez Crespo había contraído matrimonio con otra persona, y había procreado un bebé con su esposo, las relaciones entre los progenitores de la niña se habían deteriorado.

El drama que desemboca en la Orden de Protección objeto de la presente impugnación, comienza la tarde del domingo 11 de febrero de 2007 mientras la familia de la señora Rodríguez Crespo celebraba el cumpleaños de un sobrino de su esposo en el restaurante Chuck & Cheeses localizado en un centro comercial de Bayamón. La actividad se llevaba a cabo en un área privada reservada para actividades particulares, y separada del público en general que acude al restaurante de comida rápida. Ese domingo cuando terminaba el plan de relaciones paterno filiales de ese fin de semana, ya la abuela paterna sabía anticipadamente que podía entregar a la pequeña en dicho lugar, si así lo deseaba. Sin embargo, el señor Díaz Santiago se persona con la niña pasadas las 5:00 de la tarde y se dirige directamente a la señora Rodríguez Crespo, le entrega la pequeña y permanece en el lugar mirándola insistentemente, conducta que la hacer sentir intimidada, atemorizada y asustada. La señora Rodríguez Crespo le solicita a su suegro que intervenga para evitar posibles problemas y controversias, por lo que éste le requiere al señor Díaz Santiago que abandone el área privada y se moviera al área del público en general, pues la familia celebraba una actividad privada. Este se resiste a abandonar el área reservada, no empece la orientación que le brinda también la coordinadora de dicha actividad, pero faltando unos minutos para la hora límite de entrega de la niña (6:00PM), éste la toma en sus hombros y abandona el local. Al marcharse, éste expresa que buscaran, entonces, a la niña en el mismo lugar de siempre.

En vista de que había que buscar a la niña en el lugar de recogido, el Burger King de Rexville, ésta se dirige a dicho lugar. Luego de una hora de espera sin que la pequeña apareciera, la señora Rodríguez Crepo llama a la abuela paterna de la pequeña, quien le informa que regresara al restaurante Chuck & Cheeses, pues el padre entregaría la niña en dicho lugar. A eso de las 7:30 de la noche, el señor Díaz Santiago llega a dicho lugar acompañado de un policía, quien inicia una investigación porque alegadamente a éste le había expulsado del lugar, amenazado y le había proferido palabras obscenas. Luego de la investigación y las entrevistas a los presentes, el oficial de seguridad pública le recomienda a la señora Rodríguez Crespo que gestione una orden de protección.

La vista ante el TPI se lleva a cabo el 13 de marzo de 2007. Durante la vista evidenciaria testifican la señora Rodríguez Crespo, y su suegro, el señor Rubelo Ortiz González; ambos son ampliamente contra interrogados por el abogado de la otra parte. El TPI expide una Orden de Protección ese mismo día cuya vigencia se extiende del 13 de marzo de 2007 hasta el 13 de septiembre de 2007. La Orden de Protección establece que luego de examinar a las partes y a base de la prueba presentada, el TPI entiende probada la "*actitud desafiante y hostigadora hacia la peticionaria [señora Rodríguez Crespo]. Teme por su seguridad. Se suspenden las relaciones paterno-filiales hasta que el Tribunal Superior disponga lo contrario.*" En su consecuencia, el TPI ordena que el señor Díaz Santiago: (1) se abstenga de molestar, amenazar o de cualquiera otra forma interferir con la señora Rodríguez Crespo; (2) se abstenga de visitar el hogar de ésta; (3) se abstenga de visitar la escuela a la que asiste la señora Rodríguez Crespo, o la escuela donde busca a su hija, así como sus alrededores; (3) se abstenga de visitar el lugar de cuido de la pequeña, así como sus alrededores; (4) se abstenga de visitar el lugar de empleo de ésta, y sus alrededores; (5) se abstenga de visitar el hogar de los familiares de ésta y sus alrededores; y finalmente, (6) suspende provisionalmente el plan de relaciones paterno-filiales hasta que una Sala de Relaciones de Familia disponga algo en contrario.

Inconforme, el señor Díaz Santiago presenta el recurso de *certiorari* el pasado 5 de abril de 2007.

**II**

## Señalamiento de error

El señor Díaz Santiago plantea como único error lo siguiente:

*"Erró el Honorable Juez de distrito [sic] al no emitir las determinaciones de Hechos y Conclusiones de Derecho solicitadas y que dieron base a la emisión de una orden de protección la cual a nuestro entender no tenía base legal que la sustentara en derecho. No se permitió que este Honorable Tribunal pudiese revisar y revocar si en sus meritos [sic] aplicaba la revisión de dicha orden."*

Del examen minucioso del alegato del señor Díaz Santiago y de una lectura sosegada de la transcripción que obra en autos se puede concluir que su planteamiento de error apunta a que la prueba presentada no prueba ese *"patrón de conducta constante"* que sirve de base legal para expedir una orden de protección pues *"el mirar mal o insistentemente"* no constituye motivo suficiente para concluir que la parte peticionaria ha sido víctima de violencia doméstica conforme a la Ley Núm. 54.

## III

### Derecho aplicable

En *Pizarro v. Nicot,* 151 D.P.R. 944, 952-954 (2000), el Tribunal Supremo, además de resolver que el recurso apropiado para revisar una orden de protección lo constituye el recurso de *certiorari* ante este tribunal, [2] también esboza claramente cuál es la intención legislativa de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, y mejor conocida como la *"Ley para la Prevención e Intervención con la Violencia Doméstica"*, 8 L. P.R.A. sec. 601 *et seq.* (en adelante. Ley Núm. 54). En dicha opinión se acuña claramente que dicha legislación de avanzada tiene *"como propósito establecer un conjunto de medidas dirigidas a prevenir y combatir la violencia doméstica."* Por lo tanto, le otorga a los jueces la facultad para dictar medidas afirmativas de protección a las víctimas a través de la expedición de órdenes dirigidas al agresor para que se abstenga de incurrir en determinada conducta con respecto a la víctima, proveyendo un procedimiento ágil, el cual facilita la solución inmediata de las controversias. La violencia doméstica tiene varias manifestaciones, a saber: el abuso físico o emocional contra la víctima; así como, el maltrato conyugal dirigido hacia la pareja o el maltrato de menores, víctimas inocentes de la violencia entre los adultos.

Como es sabido, en Puerto Rico existe una clara política pública contra la violencia doméstica. Por ello es que la Asamblea Legislativa de Puerto Rico aprueba la Ley Núm. 54, *supra,* en el año 1989. Dicha legislación ya tiene más de una década de vigencia en Puerto Rico; por lo tanto, su impacto y las consecuencias legales que se derivan de su incumplimiento han sido ampliamente difundidas en los medios. Nuestro ordenamiento legal repudia enérgicamente la violencia doméstica por ser contraria a los valores de la paz, la dignidad y el respeto que este pueblo quiere mantener para los individuos, las familias y la comunidad en general. *Pueblo v. Castellón,* 151 D.P.R. 15, 26-27 (2000). Más aún, la violencia doméstica toma el carácter de *"un mal endémico y una infamia repudiable que aqueja la sociedad contemporánea"* y que trasciende líneas raciales, económicas y sociales. También, se denomina como una *"situación que amenaza con socavar los mismos cimientos de la estructura familiar de incontables hogares."* *San Vicente v. Policía de P.R.,* 142 D.P.R. 1, 2, 8 (1996). Esta sufrida modalidad de la violencia cotidiana es vista por nuestros tribunales, así:

*"La violencia es uno de los problemas más serios y alarmantes que aquejan al pueblo puertorriqueño, al punto que ante el enorme sentido de inseguridad personal hemos ido perdiendo sociabilidad y con ello cierto grado de urbanidad, violentando las bases de la vida comunitaria y generando respuestas de enfrentamiento fundamentadas en la pérdida de la confianza en los demás. Sin embargo, solemos atribuir la violencia únicamente al delincuente 'común', que proviene usualmente de las clases desposeídas, y cerramos los ojos ante las múltiples formas de violencia de las que somos partícipes y testigos, minimizando su importancia para dedicar la responsabilidad de los males de nuestra sociedad a otros. Tanto es así que no fue hasta 1989 que la violencia doméstica, sufrida particularmente por las mujeres, se vino a concebir real y efectivamente, al menos en el plano jurídico, como un delito en sus diversas manifestaciones: física, sexual y psicológica."* *San Vicente v. Policía de P.R., supra,* págs. 11-12. (Énfasis nuestro)

En su Artículo 2.1 sobre las órdenes de protección, la Ley Núm. 54, *supra*, sec. 621, dispone, en lo pertinente, que *"[c]ualquier persona que haya sido **víctima de violencia doméstica** ... podrá radicar ... una petición en el tribunal y solicitar una orden de protección, sin que sea necesaria la radicación previa de una denuncia o acusación."* Esta etapa es una antesala, un disuasivo y un mecanismo preventivo para evitar cualquier violencia ulterior entre las partes y constituye un remedio civil. Sin embargo, del agresor continuar en su conducta violenta, amenazadora e intimidante, entonces dicha conducta podría constituir una violación a la orden de protección ya expedida, y en efecto, se podría materializar la comisión de un delito que apareja sanciones de tipo penal.

Ahora bien, el término víctima de *"violencia doméstica"* está definido en la Ley Núm. 54, sec. 602 (p), *supra*, como:

*"**un patrón de conducta constante** de empleo de fuerza física o violencia sicológica, intimidación o persecución contra una persona por parte de su cónyuge, ex cónyuge, una persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual o una persona con quien se haya procreado una hija o un hijo, para causarle daño físico a su persona, sus bienes o a la persona de otro o para causarle grave daño emocional."*

La distinción entre la conducta expresada como *"patrón de conducta constante"* contenido en la definición de violencia doméstica y la conducta constitutiva de delito conforme los diversos *"elementos de los delitos"* tipificados ■ en la Ley Núm. 54, *supra*, queda aclarada en el caso de *Pueblo v. Figueroa Santana*, 154 D.P.R. 717, 726-727 (2001), de la manera siguiente:

*"El hecho de que en la ley se defina violencia doméstica como un patrón de conducta constante, no significa que el Art. 3.1 [delito de maltrato] requiera que la fuerza física utilizada en un incidente particular sea parte de un patrón de conducta relacionado. No es lo mismo el concepto "violencia doméstica", que es lo que define el Art. 1.3 (k) [ahora inciso p] de la Ley 54, supra, 8 L.P.R.A. sec. 602(k) [ahora inciso p], que "fuerza física" como elemento del delito de maltrato tipificado en el citado Art. 3.1 de la Ley 54. **La violencia doméstica, como concepto, se manifiesta generalmente como un patrón de conducta consistente en agresión, maltrato físico, verbal y psicológico.** No significa esto que el legislador haya pretendido, en forma alguna, limitar la fuerza física que requiere para cometer el delito de maltrato a que se pruebe el patrón de conducta constante que, como regla general, implica el concepto "violencia doméstica"."*

(Énfasis nuestro)

Es decir, se puede solicitar y el tribunal puede expedir una orden de protección contra la persona que haya incurrido en cualesquiera de las conductas tipificadas como delito en la Ley Núm. 54, *supra*, nota 3, aunque no exista un patrón de conducta. Como dicho patrón no es parte de los elementos de los delitos tipificados en la Ley Núm. 54, *supra*, no se requiere probar tal *"patrón de conducta constante"* cuando se le imputa al alegado agresor la comisión de un delito al amparo de dicho estatuto. *Pueblo v. Figueroa Santana, supra*, pág. 726. El caso anterior escudriña en el historial legislativo para ofrecernos una explicación sensata a la referencia durante las deliberaciones a la palabra violencia doméstica como un *"patrón de conducta"*, cuando se discuten los diversos delitos tipificados, a fin de poder entender su verdadera acepción. Veamos:

*"[T]omado en su verdadero contexto, lo que surge del historial legislativo es la preocupación de los legisladores y de las comisiones de la Cámara y del Senado de aprobar una ley que resultase efectiva para atacar **el grave problema de la violencia doméstica, la cual se manifiesta, en la mayoría de los casos, en un patrón continuo de abuso físico y psicológico. Las referencias que se hacen en los debates legislativos y en los informes de las distintas comisiones al "patrón de conducta" de violencia doméstica se refieren más bien a la gravedad del problema que se intentaba remediar con la aprobación de la ley."* (Énfasis nuestro)

En ese contexto de las deliberaciones legislativas la referencia al vocablo violencia doméstica debe interpretarse como el problema sociológico que se pretende erradicar, por lo que sería contrario a la intención legislativa pretender intercalarle el concepto de *"patrón de conducta"* como elemento constitutivo de los distintos delitos tipificados. Es decir, en el ámbito penal no se requiere imputar, mucho menos probar, un *"patrón de conducta constante"* para lograr una convicción por los diversos delitos tipificados en la Ley Núm. 54.

De otra parte, para expedir una orden de protección por violencia doméstica como remedio civil, distinto a su modalidad de carácter penal, es necesario probar ante el tribunal un patrón de conducta constante caracterizado por violencia psicológica, intimidación o persecución. Ley Núm. 54, *supra*, sec. 621. Las órdenes de protección expedidas al amparo de la sección 621, *supra*, claramente constituyen un remedio de naturaleza civil; por ello se expiden *"sin que sea necesaria la radicación previa de una denuncia o acusación"*. Aclarado este punto medular en nuestro análisis, debemos pues acudir a la jurisprudencia que atiende este aspecto de la Ley Núm. 54, *supra*, en el contexto propiamente civil. El caso que atiende este punto de derecho lo es *Santiago v. Ríos Alonso,* 156 D.P.R. 181 (2002). En dicho caso que se refiere a una reclamación en daños y perjuicios por alegados actos de agresión, *tanto físicos como emocionales,* se resuelve que estos actos constituyen un *patrón de conducta* violenta de maltrato físico y emocional, configurando así una causa de acción de *daños continuados*. Este caso es pertinente al caso de marras al describir y definir el *"patrón de conducta"* típico de los casos de violencia doméstica de la manera siguiente:

*"Este tipo de daños [los continuados] es provocado por una serie de actos cuyo efecto neto es precisamente mantener a la víctima en un círculo vicioso de maltrato. Es por ello que los actos de maltrato físico, emocional y sicológico componen un cuadro de daños, que, unidos, van encadenándose para producir el efecto neto del maltrato y así, en dicha circunstancia, el último daño acaecido forma parte de ese ciclo de maltrato y genera la causa de acción por éste y por los actos de maltrato anteriores componentes del referido patrón de violencia. Santiago v. Ríos Alonso, supra, pág. 192.*

*El maltrato en casos de violencia doméstica se compone, de ordinario, de un daño encadenado y cíclico que forma **un patrón de conducta**. En otras palabras, y por su propia naturaleza, este tipo de reclamación, esto es, daños por el maltrato físico y emocional durante una relación consensual, ordinariamente presenta una serie de actos que, en conjunto, producen el efecto daño motivo del resarcimiento invocado." Santiago v. Ríos Alonso, supra,* pág. 196. (Énfasis nuestro)

En el contexto civil queda definido el *"patrón de conducta"* como una serie de actos de violencia física, emocional y/o sicológica que, en conjunto, producen el círculo vicioso en que se mantiene a la víctima, ya sea para agredirla, intimidarla, perseguirla, o simplemente molestarla, provocándole en definitiva serios daños. También, cobra particular importancia en la dinámica de dicho círculo vicioso de violencia doméstica el hecho innegable de que los menores procreados entre la pareja sirven de excusa, carnada o gancho para arrinconar a la otra parte y mantenerla sometida a la conducta violenta, pues los encuentros destinados a las relaciones filiales viabilizan que la conducta del agresor sea repetitiva y se convierta en un patrón nocivo de maltrato que genera los daños en la víctima.

Veamos si en el presente caso la conducta del señor Díaz Santiago configura esa cadena de actos de persecución, intimidación, violencia sicológica y/o de abuso que, en conjunto, provocan daños a la persona con quien había cohabitado, y con quien también había previamente sostenido una relación consensual durante la cual había procreado una hija, que justifique en derecho que el TPI haya expedido la orden de protección impugnada al amparo de la sección 621, *supra*, de la Ley Núm. 54.

En el presente caso tenemos el beneficio de la transcripción de toda la prueba testifical desfilada ante el juzgador de los hechos. Por lo tanto, no estamos ante un expediente mudo y frío de una Sala de Investigaciones que limite nuestra función revisora. Sabido es que este foro apelativo no puede resolver a base de los hechos que

se exponen en los alegatos, sino que precisamos de las determinaciones de hechos realizadas por el TPI y de la transcripción o exposición narrativa de la prueba. *E.L.A. v. Mercado Carrasquillo,* 104 D.P.R. 784, 789-790 (1976). Es decir, la determinación judicial debe ser razonada y debe estar avalada por la prueba admitida ante el TPI para poder efectivamente ejercer nuestra función revisora. Veamos.

## IV
### Análisis de la cuestión planteada

De la lectura sosegada de la transcripción de la prueba oral ante el TPI podemos identificar ese "*patrón de conducta constante*" que se requiere por mandato de ley para expedir una orden de protección como un remedio de naturaleza civil, sin que sea necesario radicar previamente una denuncia o acusación criminal. Dicho patrón de conducta queda configurado por ciertos actos del señor Díaz Santiago ocurridos el domingo 11 de febrero de 2007 que bien hilvanados, relacionados unos actos con otros, y acaecidos todos de manera progresiva y sucesiva dentro de un determinado lapso de tiempo, producen el ciclo de violencia y, en efecto, la conducta prohibida. Los actos sucesivos perpetrados por el señor Díaz Santiago son los siguientes: (1) el señor Díaz Santiago se persona ese domingo a entregar la menor, a pesar de no ser la persona autorizada por el tribunal para entregar la menor a su madre, con el propósito de acercarse a ésta y a su nueva familia; (2) el señor Díaz Santiago en el lugar asume una actitud desafiante caracterizada por su mirada hostil e intimadamente hacia la madre de la menor, su actual esposo y sus familiares; (3) el señor Díaz Santiago se resiste a abandonar el área privada del local donde se celebraba una actividad estrictamente familiar hacia el área del público en general del local, a pesar de la solicitud del suegro de la señora Rodríguez Crespo y de la coordinadora de la actividad; (4) el señor Díaz Santiago se dirige ante la administradora del local para quejarse ante la solicitud de éstos; (5) el señor Díaz Santiago incómodo y molesto busca a la menor en el área privada donde disfrutaba del cumpleaños, la toma en sus hombros, es decir, no la llama ni la invita para que lo acompañe, y abandona el lugar; (6) el señor Díaz Santiago se lleva a su hija a punto de ser la hora de entrega de la menor (6:00PM) conforme el plan entonces vigente de relaciones paterno-filiales; (7) el señor Díaz Santiago al arrebatar a la niña del disfrute con otros pequeños y llevársela, entonces anuncia que la madre la busque en el lugar de siempre; (8) el señor Díaz Santiago no entrega la menor a la abuela paterna para su entrega a la hora en punto (6:00PM) ni en el lugar autorizado (Burger King) por el tribunal; (9) el señor Díaz Santiago, junto con la menor, por el contrario, se dirige a un cuartel de la policía para radicar una querella contra la madre de la niña; (10) mientras el señor Díaz Santiago procura darle curso a una acción criminal contra la madre de su hija, ésta espera por una hora en desesperación por su hija en el lugar de recogido establecido por el tribunal, sin éxito alguno, viéndose obligada a retornar al lugar de la actividad familiar; (11) el señor Díaz Santiago, luego de hora y media después de la hora establecida para la entrega de la niña, nuevamente se persona en el local donde se celebraba la actividad familiar, pero esta vez acompañado de un policía para iniciar una investigación sobre lo ocurrido previamente; (12) las gestiones del señor Díaz Santiago arruinan el ambiente de celebración familiar, y someten a los presentes al rigor de las entrevistas del policía, sin que éste lograra su propósito inmediato de presentar una querella.

Este relato, sin embargo, revela el propósito ulterior y persistente del señor Díaz Santiago de molestar, intimidar, causar desasosiego, perseguir, provocar, y atemorizar a la señora Rodríguez Crespo, y a su familia, utilizando a la niña procreada entre ambos, de ser necesario, a sus fines ulteriores. Es muy revelador el testimonio de la señora Rodríguez Crespo a preguntas del TPI, y citamos:

"*HON. JUEZ: ¿Por qué usted se afecta tanto con el señor [Díaz Santiago]?*

*SRA. RODRIGUEZ: Nosotros vivimos una **relación bien ... bien tormentosa**. El ... el ... este ... **fue violento conmigo**. Yo a él lo acusé hasta de Violencia Doméstica porque él ... él **me agredía**, me ... me ... me... **fue violento conmigo**... este ... **psicológicamente, verbalmente, me maltrató mucho, mucho mucho**, y ahora yo estoy tranquila. Estoy feliz y **él sigue y sigue y sigue, o sea, me daña la estabilidad de mi ... mía y de mi familia** porque al yo sentirme así todo el mundo ...*". ■ (Énfasis nuestro)

También abona al patrón de conducta constante, y corrobora el efecto que producen los actos en cadena del señor Díaz Santiago, el testimonio de la señora Rodríguez Crespo, que en lo pertinente, dice:

*"SRA. RODRIGUEZ: **Me siento muy mal, atemorizada**. Yo ... este ... por eso mismo había acordado con la mama [sic] de el [sic] que fuera ella el recurso porque no quiero tener estas situaciones más. Yo ... ya yo ... **van seis años que nosotros terminamos y todavía sigo teniendo problemas**."* ■ (Énfasis nuestro)

Al ponderar los incidentes narrados por la señora Rodríguez Crespo durante la vista en solicitud de la orden de protección, se puede observar el conjunto de sucesos ocurridos el 11 de febrero de 2007 cuando el peticionario-querellado aparece con la menor y penetra en una fiesta privada, se dirige directamente a la señora Rodríguez Crespo, pero sin proferir palabra alguna, mira de manera desafiante e insistentemente a los presentes, y en particular, a ella, de tal suerte que ésta se siente amenazada, asustada e intimidada. Además, la actitud hostil de posar, merodear y hasta enojarse cuando le pidieron que se retirara, tomando entonces bruscamente a su hija, y abandonando el local, es otro incidente dentro del patrón de conducta requerido. Su desaparición con la niña por un lapso de tiempo prolongado, es otro evento dirigido a causar incertidumbre y temor en la señora Rodríguez Crespo. Finalmente, su retorno tardío junto con la policía confirma el patrón de conducta constante en el empleo de violencia sicológica, de intimidación y persecución contra la señora Rodríguez Crespo.

Entendemos que la prueba desfilada ante el TPI configura el patrón de conducta constante en el empleo de violencia sicológica, de intimidación y persecución contra la señora Rodríguez Crespo a fin de causarle grave daño emocional que justifica plenamente la orden de protección expedida el 13 de marzo de 2007 contra el señor Díaz Santiago de conformidad a las disposiciones aplicables de la Ley Núm. 54, *supra*, sec. 621. En su consecuencia, entendemos, por los fundamentos expuestos, que el TPI al expedir dicha orden de protección ha actuado conforme a derecho.

## V

**Disposición del recurso**

Se expide el recurso de *certiorari* y se confirma la actuación del TPI al expedir la orden de protección del 13 de marzo de 2007 a favor de la señora Rodríguez Crespo al amparo de la Ley Núm. 54, por lo que se sostienen y validan las distintas prohibiciones dirigidas contra el señor Díaz Santiago durante la vigencia de la misma.

Así lo acordó y manda el Tribunal y lo certifica la señora Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones