Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| GERARDO FELICIÉ MARRERO Y OTROS<br><br>*Recurrido*<br><br>v.<br><br>BRAND ENERGY & INFRASTRUCTURE SERVICES OF PUERTO RICO CORP. Y OTROS<br><br>*Peticionario* | KLCE202500525 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.: GM2024CV00540 (301)<br><br>Sobre: Caída |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece ante nos, Brand Energy & Infrastructure Services of Puerto Rico Corp. (Brand o peticionario) mediante recurso de *Certiorari*, en el cual solicita la revisión de la *Resolución*[1] emitida el 11 de marzo de 2025, notificada el 14 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Guayama (TPI o foro recurrido). Mediante esta, el foro recurrido denegó la *Solicitud de Desestimación bajo la Regla 10.2*[2] presentada por el peticionario.

Por los fundamentos que expondremos a continuación, **se expide** el auto solicitado y se **confirma** la *Resolución* recurrida.

## I.

El 16 de julio de 2024, el señor Gerardo Felicié Marrero y la señora Noemí Ruiz Ruiz, por sí y en representación de Jeremy Felicié Ruiz (Felicié-Ruiz o recurridos), instaron una *Demanda*[3] de daños y perjuicios, responsabilidad objetiva y productos defectuosos en

---

[1] Apéndice del recurso de *Certiorari*, págs. 71-80.
[2] Apéndice del recurso de *Certiorari*, págs. 22-31.
[3] Apéndice del recurso de *Certiorari*, págs. 1-18.

Número Identificador

SEN2025_____

contra de Brand; Advanced Technical Services, LLC (ATS), sus correspondientes aseguradoras identificadas con nombre ficticio, y una compañía identificada con el nombre ficticio de Suplidora.

En esta, alegaron que la muerte de Jeremy Felicié Ruiz ocurrió debido a la imprudencia temeraria y la negligencia de Brand y ATS. Señalaron una serie de eventos que demostraron los actos intencionales del patrono que hicieron inaplicables la inmunidad patronal. Además, plantearon que los peticionarios utilizaron materiales defectuosos que ocasionaron el incidente. Por ende, al tratar sobre un producto defectuoso, no era necesario alegar la negligencia de Brand. En la alternativa, solicitaron que, si el TPI determinaba que al peticionario le cobija la inmunidad patronal, se declarara inconstitucional la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935 (Ley Núm. 45)[4].

Así las cosas, el 21 de octubre de 2024, Brand presentó una *Solicitud de Desestimación Bajo la Regla 10.2*[5]. En la misma, alegó que, a la fecha en que ocurrió el accidente, tenía una póliza con el Fondo del Seguro del Estado (Fondo) y que, al amparo de la Ley Núm. 45, *supra*, estaba cobijado por la inmunidad patronal. Asimismo, incluyó una copia del contrato con ATS y la Certificación de Póliza de Seguro emitida por el Fondo para asegurar la recertificación de los andamios. Además, el peticionario argumentó que la *Demanda* carecía de alegaciones que establecieran la existencia de un acto negligente o intencional.

Por su parte, el 2 de diciembre de 2024, Felicié-Ruiz presentó su *Oposición a Solicitud de Desestimación*[6], en la cual señaló que la inmunidad patronal era inaplicable cuando se trataba sobre actos intencionales de un patrono. Puntualizó que, las alegaciones iban

---

[4] 11 LPRA sec. 1.
[5] Apéndice del recurso de *Certiorari*, págs. 22-31.
[6] Apéndice del recurso de *Certiorari*, págs. 48-68.

dirigidas a establecer que Brand realizó faltas intencionales, actos intencionales y conductas antijurídicas e ilegitimas de tal magnitud que constituían intención. Igualmente, indicó que la solicitud de desestimación era académica, toda vez que, ATS contestó la *Demanda* y era improcedente separar a Brand de ATS, porque estos resultaban indivisibles para los efectos de la inmunidad patronal. En ese sentido, la *Contestación a Demanda*[7] constituyó una renuncia a la inmunidad patronal.

Consecuentemente, el 12 de febrero de 2025, el TPI celebró una vista argumentativa en la que atendió lo referente a la *Solicitud de Desestimación al Amparo de la Regla 10.2* presentada por Brand. En cuanto a ello, el 11 de marzo de 2025, el foro recurrido emitió una *Minuta*[8] de la cual surgió que, luego de escuchar las posiciones de las partes, emitiría una resolución. Además, citó a las partes a una conferencia inicial a ser celebrada el 18 de abril de 2025. En vista de lo anterior, el 14 de marzo de 2025, el TPI emitió la *Resolución*[9] en la que declaró *No Ha Lugar* la *Solicitud de Desestimación bajo la Regla 10.2* presentada por el recurrido. El TPI formuló las siguientes determinaciones de hechos incontrovertidos:

1. El 13 de julio de 2022, en el turno de la noche en o alrededor de las 2 de la mañana, Jeremy Felicié Ruiz, se encontraba trabajando en la reparación de una caldera y en la instalación del andamio necesario para llevar a cabo dicho proyecto de reparación.

2. El trabajo de reparación se llevaba a cabo en una de las calderas de la empresa AES de Puerto Rico.

3. AES contrató a la empresa [Brand] para que llevase a cabo los trabajos de reparación.

4. [Brand] subcontrató a ATS para que supliese la mano de obra y llevase a cabo los trabajos de reparación para los cuales fue contratada por AES.

5. Jeremy Felicié Ruiz era empleado de ATS.

6. Mientras se llevaban a cabo los trabajos de reparación una de las plataformas del andamio cayó de una altura

---

[7] Apéndice del recurso de *Certiorari*, págs. 33-43.
[8] Apéndice del recurso de *Certiorari*, págs. 69-70.
[9] Apéndice del recurso de *Certiorari*, págs. 71-80.

aproximada de 26 pies, impactando a Jeremy en la cabeza y el rostro.

7. Debido al accidente Jeremy perdió la conciencia, fue trasladado al Hospital Menonita de Cayey y luego, al ser trasladado al Centro Médico de San Juan, perdió la vida.

De igual forma, el TPI expuso como hechos en controversia los siguientes:

1. Se desconoce si en efecto existía un defecto de producción en los materiales utilizados para armar el andamio.

2. Se desconoce quién produjo, o distribuyó el alegado material defectuoso.

3. Existe controversia sobre quién era en efecto el patrono de Jeremy Felicié Ruiz. Debido a esto, se desconoce si Jeremy Felicié Ruiz estaba cubierto por la póliza que [Brand] mantenía con la Corporación del Fondo del Estado o debía estar cubierto por una póliza similar adquirida por ATS.

4. Existe controversia sobre la fecha de efectividad de la póliza que [Brand] contrató con la Corporación del Fondo del Seguro del Estado y si la misma estaba vigente el día en que ocurrió el accidente que dio paso a la presente reclamación.

Así pues, el 31 de marzo de 2025, Brand presentó una *Moción Solicitando Reconsideración*[10] en la cual planteó que el foro recurrido determinó erróneamente que existía controversia sobre la existencia de una cubierta de póliza de seguro a la fecha del accidente, porque el pago se realizó en una fecha posterior a la adquisición de la póliza. Señaló que la *Certificación de Vigencia*[11] no disponía una fecha de pago, sino una fecha de vencimiento. Igualmente, citó el Reglamento Núm. 9220, Reglamento para Gobernar el Seguro de Compensaciones por Accidentes del Trabajo (Reglamento Núm. 9220)[12], parte V (3), que define la *Certificación de Vigencia* como un documento que se emite para certificar o dar fe de que al momento de la expedición "la póliza de seguro obrero de un patrono está vigente y que éste cumple con los requisitos de Ley para estar asegurado".

---

[10] Apéndice del recurso de *Certiorari*, págs. 81-87.
[11] Apéndice del recurso de *Certiorari*, pág. 31.
[12] Corporación del Fondo del Seguro del Estado, Reglamento para Gobernar el Seguro de Compensación por Accidentes del Trabajo, 19 de diciembre de 2019, en https://www.cfse.pr.gov/wp-content/uploads/2020/08/REGLAMENTO-PARA-GOBERNAR-EL-SEGURO-DE-COMPENSACIONES-POR-ACCIDENTES-DEL-TRABAJO.pdf.

Así las cosas, el 14 de abril de 2025, el TPI emitió una *Resolución Interlocutoria*[13], en la cual declaró *No Ha Lugar* la *Moción Solicitando Reconsideración*. Posteriormente, el foro recurrido emitió una *Minuta*[14] sobre la conferencia inicial celebrada el 28 de abril de 2025, en la que se hizo constar que el descubrimiento de prueba no había progresado debido a que Brand aún estaba en término para acudir ante este foro.

Consecuentemente, inconforme con el dictamen del TPI, la parte peticionaria presenta el recurso de epígrafe y plantea los siguientes señalamientos de error:

> **PRIMER ERROR**: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TPI AL ESTIMAR QUE HABÍA CONTROVERSIA SOBRE SI BRAND ENERGY HABÍA OPORTUNAMENTE PAGADO SU PÓLIZA DEL FONDO, A PESAR DE QUE LA DEMANDA NO ALEGA QUE BRAND ENERGY ERA PATRONO NO ASEGURADO, Y A PESAR DE QUE POR EL REGLAMENTO, EL CERTIFICADO EMITIDO POR EL FONDO ACREDITABA QUE PARA LA FECHA EN QUE SE EMITIÓ BRAND ENERGY ESTABA DEBIDAMENTE ASEGURADO.
>
> **SEGUNDO ERROR**: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TPI AL CONCLUIR QUE BRAND ENERGY FALLÓ EN ARGUMENTAR LA RELACIÓN ENTRE BRAND ENERGY Y EL FENECIDO, A PESAR DE QUE SE TRATABA DE UNA MOCIÓN DE DESESTIMACIÓN Y QUE LA DEMANDA ALEGABA QUE EL FENECIDO ERA EMPLEADO DE ATS Y QUE BRAND ENERGY CONTRATÓ A ATS PARA SUPLIR MANO DE OBRA.
>
> **TERCER ERROR**: ERRÓ EL TPI AL NO DESESTIMAR LA DEMANDA A PESAR DE QUE BRAND ENERGY ES PATRONO ASEGURADO, Y A PESAR DE QUE LAS ALEGACIONES DE INTENCIONALIDAD NO ALCANZAN EL GRADO NECESARIO PARA DERROTAR LA INMUNIDAD PATRONAL.

Mediante *Resolución* emitida el 20 de mayo de 2025[15], concedimos a los recurridos un término de diez (10) días para expresarse en torno a la expedición del auto de *Certiorari*. Transcurrido el término sin que los recurridos se expresaran, damos por perfeccionado el recurso ante nuestra consideración y procedemos a resolver sin el beneficio de su comparecencia.

---

[13] Apéndice del recurso de *Certiorari*, pág. 88.
[14] Entrada Núm. 29 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[15] Notificada el 2 de mayo de 2025.

## II.

### -A-

El auto de *Certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[16] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[17]. Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[18]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[19].

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[20]. No obstante, la Regla 52.1, *supra*, faculta nuestra intervención en situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o

---

[16] 32 LPRA Ap. V, R. 52.1.
[17] 4 LPRA Ap. XXII-B, R. 40.
[18] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[19] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[20] *García v. Padró*, 165 DPR 324, 334-335 (2005); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 180 (1992).

peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión[21].
[...]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de *Certiorari*, este Tribunal debe tomar en consideración los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, para ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios antes enumerados, se justifica nuestra intervención, pues distinto al recurso de apelación, este tribunal posee discreción para expedir el auto de *Certiorari*[22]. Por supuesto, esta discreción no opera en el vacío y en ausencia de parámetros que la dirijan[23].

---

[21] 32 LPRA Ap. V, R. 52.1.
[22] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[23] *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

**-B-**

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil[24], "es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra"[25]. La citada regla dispone que la parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes:

(1) falta de jurisdicción sobre la materia;
(2) falta de jurisdicción sobre la persona;
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
(5) dejar de exponer una reclamación que justifique la concesión de un remedio;
(6) dejar de acumular una parte indispensable[26].

Al resolver una moción de desestimación bajo la Regla 10.2 (5), *supra,* los tribunales deberán tomar "como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas"[27]. La norma que impera es que "tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más favorable posible para la parte demandante"[28].

Por lo tanto, "al examinar la demanda para resolver este tipo de moción se debe ser sumamente liberal y 'únicamente procedería [desestimar] cuando de los hechos alegados no podía concederse remedio alguno a favor del demandante'"[29]. Además, "[t]ampoco procede la desestimación, si la demanda es susceptible de ser enmendada"[30]. Nuestro máximo foro judicial ha expresado que al examinar una moción de este tipo "**debemos considerar, 'si a la luz de la situación más favorable al demandante, y resolviendo toda**

---

[24] 32 LPRA Ap. V, R. 10.2.
[25] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008).
[26] 32 LPRA Ap. V, R. 10.2.
[27] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008).
[28] *Íd.,* págs. 428-429.
[29] *Colón Rivera v. ELA*, 189 DPR 1033, 1049 (2013), que cita a R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231.
[30] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008).

**duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida"**[31]. (Énfasis nuestro).

En síntesis, el Tribunal debe aceptar como ciertos todos los hechos que hayan sido bien alegados en la demanda y excluir de sus análisis conclusiones legales. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba[32].

Por otro lado, la Regla 10.2 de Procedimiento Civil, *supra*, dispone, en lo pertinente, lo siguiente:

> Si en una moción en que se formula la defensa número (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 de este apéndice hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla.

Cónsono con lo anterior, una moción de desestimación que expone materias nuevas debe cumplir con la Regla 36 de Procedimiento Civil[33]. El Tribunal Supremo de Puerto Rico ha expresado que materias no contenidas en la alegación impugnada puede consistir en: defensa de caducidad o prescripción, copia de contratos, deposiciones, admisiones, certificaciones y contestaciones a interrogatorios[34].

---

[31] *Íd.* que cita a *Pressure Vessels P.R. v. Empire Gas P.R.*,137 DPR 497 (1994); *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991).
[32] R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.
[33] 32 LPRA Ap. V, R. 36.
[34] *Luan Invest. Corp. v. Rexach Const. Co.*, 152 DPR 652, 664-665 (2000); *Torres Capeles v. Rivera Alejandro*, 143 DPR 300, 309 (1997).

**-C-**

El objetivo de la sentencia sumaria es "propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales"[35]. La Regla 36 de Procedimiento Civil establece los parámetros de este mecanismo[36]. Estas disponen que:

> [P]ara dictarse sentencia sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, surja que no hay controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, se debe dictar sentencia sumaria a favor de la parte promovente[37].

La Regla 36.3(a)(4) establece que la parte promovente "está obligada a [desglosar los hechos] en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya"[38]. De igual forma, se impone la misma responsabilidad al oponente de "citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para **cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente**"[39]. El oponente debe probar que existe una controversia sobre un hecho material que es constitutivo de la causa de acción del demandante[40].

Como norma general, si la moción procede en derecho, el tribunal debe dictar la sentencia sumaria "**a favor del promovente si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada**"[41]. La parte oponente no

---

[35] *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012).
[36] 32 LPRA Ap. V, R. 36.
[37] *Const. Jose Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012).
[38] 32 LPRA Ap. V, R. 36 (a)(4) y *SLG Zapata-Rivera v. J. F. Montalvo*, 189 DPR 414, 432 (2013).
[39] *Íd.* (Énfasis nuestro).
[40] *Oriental Bank v. Perapi*, 192 DPR 7, 26 (2014).
[41] *SLG Zapata-Rivera v. J. F. Montalvo*, 189 DPR 414, 432 (2013). (Énfasis nuestro).

puede quedarse de brazos cruzados y apoyarse meramente en sus alegaciones, es imperativo que presente su prueba[42]. Si este se aparta de las directrices, el tribunal podrá no tomar en consideración el intento de la impugnación[43]. Más aún, pudiera dictar sentencia a favor del promovente si procede en derecho[44].

Ahora bien, reiteradamente el Máximo Foro ha indicado que el mecanismo de sentencia sumaria no es el apropiado para resolver casos en donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial[45]. Sin embargo, no constituye un impedimento para el uso de este mecanismo cuando se trata sobre elementos intencionales o subjetivos[46]. El Tribunal Supremo ha establecido que "acoger una moción de sentencia sumaria de forma prematura puede tener el efecto de privar al promovido de sus derechos sin un debido proceso de ley"[47].

Si el Tribunal de Primera Instancia considera que **no procede** dictar sentencia sumaria en el caso que tiene ante sí, o que **no procede conceder ese remedio en su totalidad**, es obligatorio que cumpla con lo expuesto en la Regla 36.4 de Procedimiento Civil[48], que dispone:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, **será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia.** Al

---

[42] *Oriental Bank v. Perapi*, 192 DPR 7, 26 (2014); *Sánchez Montalvo v. Aut. de los Puertos,* 153 DPR 559, 570 (2001).
[43] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 433 (2013).
[44] *Meléndez González v. M. Cuebas*, 193 DPR 100, 111 (2015).
[45] *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301 (1994).
[46] *Ramos Pérez v. Univisión,* 178 DPR 200, 219 (2010).
[47] *Pérez v. El Vocero de PR*, 149 DPR 427, 449 (1999).
[48] 32 LPRA Ap. V, R. 36.4. (Énfasis nuestro).

celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.

Confrontado el Tribunal con una solicitud de sentencia sumaria, éste puede, en el ejercicio de su discreción, posponer la evaluación de la moción para viabilizar el principio procesal de hacer justicia al resolver las controversias[49]. Así, el TPI está autorizado a posponer la solución de una moción de sentencia sumaria hasta que se complete el descubrimiento de prueba que permita a la otra parte formular una oposición adecuada[50]. Es menester consignar los hechos que, a juicio del TPI, están en controversia y aquellos que no lo están es imperativo para entender cuáles son los hechos que impiden que se dicte la sentencia sumaria en su totalidad. Cónsono con esta disposición, la Regla 42.2 de Procedimiento Civil establece que se deben especificar los hechos probados junto a las conclusiones de derecho en todos los pleitos[51]. Sin embargo, el tribunal queda relevado de realizar las especificaciones si resuelve mociones bajo las Reglas 10 ó 36.1 y 36.2[52]. Empero resulta necesario determinar los hechos cuando se deniega total o parcialmente una moción de sentencia sumaria, conforme a la Regla 36.4[53].

Al revisar la determinación del TPI, el foro apelativo se limita a considerar los documentos que se presentaron ante el foro primario, entiéndase, las partes no pueden añadir en la apelación documentos, teorías o asuntos que no fueron presentados oportunamente[54]. Por otra parte, el foro apelativo únicamente puede determinar si existe alguna controversia sobre los hechos materiales y si se aplicó de manera correcta el derecho[55]. Así las cosas, el

---

[49] *Pérez v. El Vocero de PR*, 149 DPR 427, 449 (1999).
[50] *Santiago v. Ríos Alonso,* 156 DPR 181, 194 (2002).
[51] 32 LPRA Ap. V, R. 42.2.
[52] *Íd.*
[53] *Íd.*
[54] *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004).
[55] *Íd.,* pág. 335.

Tribunal Supremo discutió el estándar que debe utilizar esta curia para revisar las mociones de sentencia sumaria en *Meléndez González v. M. Cuebas*[56]. En primer lugar, el Tribunal de Apelaciones se encuentra en la misma posición que el TPI, sin embargo, la revisión es de *novo,* por lo que se "debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria"[57]. De modo que, al estar en la misma posición que el TPI, se debe examinar que la moción y la oposición deben cumplir con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*[58]. Consecuentemente, al analizar la sentencia dictada por el TPI, se "debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos"[59]. Finalmente explica que "de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia"[60].

El Tribunal Supremo resolvió que los tribunales tienen discreción de examinar la evidencia que obra en los autos, aunque fuera omitida por las partes[61]. Incluso, estos pueden "obviar material que las propias partes hayan pasado por alto en sus escritos y resolver estrictamente a base de lo que haya sido presentado"[62].

---

[56] *Meléndez González v. M. Cuebas*, 193 DPR 100, 118–119 (2015).
[57] *Íd.*, pág. 118.
[58] *Íd.*
[59] *Íd.*
[60] *Íd.,* pág. 119.
[61] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 433 (2013).
[62] *Íd.*

**-D-**

La Ley Núm. 45, *supra,* sirve como medida de protección social para garantizar la compensación del obrero contra riesgos a su salud relacionados con el trabajo[63]. El estatuto establece una compensación para los empleados que se accidentan, se lesionan o mueran a raíz de un accidente en el empleo[64]. Esta aportación patronal que le garantiza la compensación al obrero a su vez reconoce la inmunidad del patrono contra los daños y perjuicios que pudiera reclamar el empleado[65]. El percepto no funge como una defensa disponible para el patrono, sino que equivale a la inexistencia total de una posible causa de acción[66]. Así las cosas, el Artículo 17 de la Ley Núm. 45[67] establece la obligación de asegurar subsidiariamente a los empleados de los patronos con los que "ajustó o contrató y los de un contratista o subcontratista independiente cuando estos no aseguren a sus propios empleados"[68]. Igualmente, el Artículo 18 de la referida ley dispone que "[c]uando el patrono asegure sus obreros y empleados de acuerdo con la presente ley, el derecho aquí establecido para obtener compensación será el único remedio en contra del patrono [...]"[69]. Así pues, el pago de esta póliza inmuniza a todos los patronos independientemente de que el pago se haya realizado por el contratista, subcontratista, o en la alternativa, el dueño de la obra[70].

Para invocar esta inmunidad de manera exitosa es necesaria la existencia de un nexo causal entre el accidente y el empleo, en específico: "(a) provenga de cualquier acto o función del obrero; (b) sea inherente al trabajo o empleo del obrero, y (c) ocurra en el curso

---

[63] *Arzuaga Monserrate v. Empresas Ortiz Brunet, Inc.*, 211 DPR 803, 810 (2023).
[64] *López v. Western Auto*, 171 DPR 185, 192 (2007).
[65] *Arzuaga Monserrate v. Empresas Ortiz Brunet, Inc.*, 211 DPR 803, 810-811 (2023).
[66] *SLG Ortiz Jiménez v. Rivera Núñez*, 194 DPR 936, 942 (2016).
[67] 11 LPRA sec. 20.
[68] *SLG Ortiz Jiménez v. Rivera Núñez*, 194 DPR 936, 942 (2016).
[69] 11 LPRA sec. 21.
[70] *Viuda de Costas v. PR Olefins,* 107 DPR 782, 785 (1978).

de éste"[71]. Así, el empleado no tiene que probar que hubo negligencia por parte del patrono[72]. Por otro lado, la inmunidad "tampoco se extiende a las lesiones producidas intencionalmente por el patrono"[73]. Más aún, el Tribunal Supremo puntualizó que la inmunidad no se cobija al patrono cuando:

> (1) el daño sufrido por el obrero se debe a un acto intencional y/o discriminatorio del patrono; (2) cuando el patrono del obrero que sufre el accidente en el escenario del trabajo no está asegurado; o (3) el patrono demandado hubiera actuado en virtud de doble capacidad o personalidad. En tales casos, el patrono responderá civilmente ante los tribunales e indemnizará al empleado que haya sufrido el "accidente del trabajo"[74].

Nuestro más Alto Foro discutió que la negligencia crasa por parte del patrono al no proveer un ambiente laboral seguro no constituye una excepción ante la inmunidad patronal, por lo que el único remedio disponible es aquel provisto por el Fondo[75].

Sobre la figura del patrono estatutario, el Máximo Foro la ha definido como "aquel que contrata los servicios de otra compañía y [...] los trabajadores de ésta. De este modo, tales obreros tienen un patrono directo o real —que es aquel con quien contrataron— y un patrono indirecto o estatutario, que es aquel con quien contrató su patrono directo o real"[76]. Igualmente puntualizó que, la inmunidad de un patrono estatutario opera en dos (2) circunstancias:

> (1) si cumple con su obligación de asegurar ante el Fondo a los trabajadores del patrono real que éste no haya asegurado, o (2) si el patrono que él contrató para que le realizara determinados servicios ha asegurado a sus trabajadores, los cuales van a realizar tales servicios para el patrono estatutario[77].

Existe una importancia de distinguir a un patrono estatutario de un tercero ya que "mientras el patrono estatutario queda cobijado por la inmunidad que protege al patrono directo asegurado o por su

---

[71] *López v. Western Auto*, 171 DPR 185, 195 (2007).
[72] *Guzmán y ortos v. ELA*, 156 DPR 693, 729 (2002).
[73] *Soc. de Gananciales v. Royal Bank de PR*, 145 DPR 178, 196 (1998).
[74] *Guzmán y ortos v. ELA*, 156 DPR 693, 731 (2002).
[75] *Hernández v. Bermudez & Longo, SE,* 149 DPR 543, 549 (1999).
[76] *Martínez v. Bristol Myers, Inc.*, 147 DPR 383, 395–396 (1999).
[77] *Íd.*, pág. 397.

propia inmunidad si cumple con la obligación de asegurar a los trabajadores no asegurados por el patrono directo, el tercero causante del daño será responsable ante demandas judiciales en daños y perjuicios[78]. En otras palabras, el tercero es una persona extraña a la relación entre el patrono estatutario y el contratista en la obligación legal de asegurar a los empleados al amparo de la Ley Núm. 45, *supra*[79]. De igual forma, no puede considerarse tercero aquella persona a quien la Ley dispensa la obligación de asegurar a los empleados[80].

Ahora bien, según el Reglamento Núm. 9220, *supra*, la certificación de vigencia se define como "un documento que emite la Corporación del Fondo del Seguro del Estado que certifica o da fe, al momento de su expedición, que la póliza de seguro obrero de un patrono está vigente y que éste cumple con los requisitos de Ley para estar asegurado"[81]. Igualmente, en la parte VI. Disposiciones generales, (O) Requisitos para ser considerado un patrono asegurado; dispone que además de suscribir una póliza del seguro obrero, ya sea permanente o eventual, deberá cumplir con lo siguiente:

> 1. Rendir la declaración de nómina en o antes del 20 de julio de cada año, si su póliza es permanente.
>
> 2. Pagar sus primas en o antes de las fechas de imposición (vencimiento) de las cuotas o plazos semestrales establecidos.
>
> 3. Incluir dentro de su póliza los riesgos que cubren todas las operaciones y actividades del patrono.
>
> 4. Incluir todas las localidades donde el patrono desarrolla sus actividades u operaciones.
>
> 5. Para pólizas eventuales, solicitar extensión de vigencia antes de las fechas de vencimiento en caso de no haber terminado los trabajos[82].

---

[78] *Martínez v. Bristol Myers, Inc.*, 147 DPR 383, 398 (1999).

[79] *Lugo Sánchez v. AFF*, 105 DPR 861, 866-867 (1977).

[80] *Íd.*, pág. 867.

[81] Corporación del Fondo del Seguro del Estado, Reglamento para Gobernar el Seguro de Compensación por Accidentes del Trabajo, 19 de diciembre de 2019, en https://www.cfse.pr.gov/wp-content/uploads/2020/08/REGLAMENTO-PARA-GOBERNAR-EL-SEGURO-DE-COMPENSACIONES-POR-ACCIDENTES-DEL-TRABAJO.pdf.

[82] *Íd.*

**III.**

En su primer error, Brand señaló que el TPI incidió al determinar como un hecho controvertido si el pagó de la póliza de seguro se realizó oportunamente, a pesar de que el *Certificado de Vigencia* disponía que el peticionario estaba debidamente asegurado.

El foro recurrido determinó en su *Resolución* que ATS era el encargado de mantener una póliza de seguro para sus empleados con el Fondo. Según se desprende del contrato[83]: "[l]a compañía contratada será responsable de todos los pagos relacionados a los empleados que sean sub-contratados por [Brand] (CFSE, Fed. Med., P.R. Withholding, Etc.)"[84]. Luego de evaluar la *Certificación de Vigencia*, el TPI concluyó que la póliza cubría únicamente a los empleados de Brand. Igualmente, señaló que el primer pago de la póliza ocurrió el 20 de agosto de 2022, por lo que cobró vigencia posterior a la fecha del accidente.

Según el Reglamento Núm. 9220, la certificación de vigencia es un documento que certifica o da fe de que al momento de expedirse la póliza de seguro de un patrono está vigente y cumple con los requisitos de Ley para estar asegurado[85]. De igual forma, dispone que para considerarse un patrono asegurado tiene que, entre otras cosas, pagar las primas en o antes de las fechas de vencimiento de las cuotas establecidas[86]. Entiéndase que, si no cumple con las fechas del pago, se interpretará como que el patrono nunca estuvo asegurado.

---

[83] Apéndice del recurso de *Certiorari*, pág. 30.
[84] Apéndice del recurso de *Certiorari*, pág. 20.
[85] Corporación del Fondo del Seguro del Estado, Reglamento para Gobernar el Seguro de Compensación por Accidentes del Trabajo, 19 de diciembre de 2019, en https://www.cfse.pr.gov/wp-content/uploads/2020/08/REGLAMENTO-PARA-GOBERNAR-EL-SEGURO-DE-COMPENSACIONES-POR-ACCIDENTES-DEL-TRABAJO.pdf.
[86] *Íd.*

La *Certificación de Vigencia* se emitió el 1 de julio de 2022 y sería válida hasta el 30 de junio de 2023. Sin embargo, el TPI concluyó que la póliza de seguro cobró vigencia el 20 de agosto de 2022. Lo cierto es que, esta fecha solo constituye una fecha límite en la que el patrono debía completar el pago. Las cuotas de vencimiento no podían interpretarse como la fecha en la que comenzó la vigencia de la póliza de seguro. La certificación de vigencia constituye una confirmación de que el patrono cumple con los requisitos expuestos en la ley, de los cuales se desprende que uno de estos es pagar las pólizas en o antes de las fechas de vencimiento. Ante ello, resultaría forzoso concluir que la póliza no se encontraba vigente cuando las disposiciones que rigen el Fondo establecen que se considera asegurado si cumple con los pagos antes de la fecha de vencimiento.

Es menester señalar que, del documento presentado, no surgió si Brand pagó la póliza de seguro, por lo que no podemos determinar si en efecto el pago ocurrió. De igual manera, del expediente ante nuestra consideración, no surgió evidencia alguna de cuándo ocurrieron los pagos de la referida póliza. Por ende, en estos momentos, no se puede determinar si en efecto Brand cumplió con los pagos para ser considerado un patrono asegurado.

En su segundo error, el peticionario cuestiona el segundo párrafo de la página 9 de la Resolución[87] impugnada, a saber: *Por otra parte, nos encontramos ante las alegaciones hechas por la propia parte Demandante, intentando establecer que a pesar de que BEIS es patrono de Jeremy a éstos no le cobija la exención de la inmunidad patronal por haber cometido actos de negligencia e imprudencia temeraria atribuibles a actos intencionales. Por consiguiente, la relación patrono-obrero, entre Jeremy y BEIS está en controversia.*

---

[87] Apéndice del recurso de *Certiorari*, pág. 79.

Específicamente, señaló que, al tratarse de una moción de desestimación, los hechos bien alegados en la demanda se deben interpretar como ciertos. Más aun, el peticionario razona que, para propósitos de esa moción, el TPI debió determinar que el fenecido era empleado de ATS, quien fue contratado por Brand, y así limitar su análisis en cuanto a si la demanda alegaba hechos suficientes, asumiendo eran ciertos, que permitiesen concluir que había actuado con intencionalidad, lo que derrota la inmunidad patronal.

Al analizar una moción de desestimación al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra*, el TPI deberá tomar como ciertos todos los hechos bien alegados en la demanda[88].

De un análisis de la Resolución impugnada y, según surge de la Demanda, se alegó que el fenecido trabajaba para ATS al momento de los hechos. Igualmente, del recurso presentado ante nos por Brand se esboza que el peticionario decide subcontratar a ATS para que le supliera sus propios empleados. Subsiguientemente, en su *Solicitud de Desestimación bajo la Regla 10.2*, Brand estableció que, según alegado, el fenecido era empleado de ATS y que a la fecha de los hechos esta era subcontratada para realizar ciertas labores en un proyecto. Por otro lado, en su *Contestación a Demanda,* ATS aceptó que el fenecido trabajaba para este y que Brand adquirió los servicios para que este le proveyera de sus empleados. Por ende, entendemos que no existe controversia alguna sobre quién verdaderamente era el patrono del fenecido, ya que en todos los escritos se menciona que este trabajaba para ATS, quien fue subcontratada por Brand. De igual manera, el TPI estableció en los hechos incontrovertidos que "(4) [Brand] subcontrat[ó] a ATS para que supliese la mano de obra y llevase a cabo los trabajos de reparación para los cuales fue contratada por AES; (5) Jeremy

---

[88] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008).

Felicié Ruiz era empleado de ATS"[89]. Por otra parte, el foro recurrido determinó que "existe controversia sobre quién era en efecto el patrono de Jeremy Felicié Ruiz"[90] a los efectos de si Brand o ATS poseían póliza a favor de Jeremy Felicié Ruiz y a quien le corresponde la obligación legal de asegurar al fenecido, para así determinar posteriormente si en efecto es de aplicación la excepción de inmunidad patronal[91]. Por consiguiente, el error no fue cometido.

Por último, Brand alegó que erró el TPI al no desestimar la *Demanda* a pesar de que las alegaciones de intención no eran suficientes para establecer que no aplica la inmunidad patronal. No le asiste la razón. Veamos.

La Ley Núm. 45, *supra*, es un mecanismo que garantiza la compensación del obrero contra riesgos en durante su jornada laboral. Esta garantía reconoce una inmunidad al patrono ante acciones de daños y perjuicios que puedan ser empleadas en su contra[92]. La inmunidad equivale a la inexistencia de la acción. Así pues, se extiende a todos los patronos independientemente de quien haya realizado el pago de la póliza de seguro. El patrono no puede ser un tercero en la relación entre el patrono y el contratista, de serlo, no quedaría protegido por la inmunidad patronal. Para invocar esta inmunidad de manera exitosa es necesaria la existencia de un nexo causal entre el accidente y el empleo, en específico: "(a) provenga de cualquier acto o función del obrero; (b) sea inherente al trabajo o empleo del obrero, y (c) ocurra en el curso de éste"[93]. La inmunidad patronal protege al patrono de las acciones negligentes que este pudiera cometer. Sin embargo, resulta inoperante cuando los actos atribuidos resultan en intención. El Tribunal Supremo

---

[89] Apéndice del recurso de *Certiorari*, pág. 74.
[90] Apéndice del recurso de *Certiorari*, pág. 80.
[91] Apéndice del recurso de *Certiorari*, pág. 78.
[92] *Arzuaga Monserrate v. Empresas Ortiz Brunet, Inc.*, 211 DPR 803, 810-811 (2023).
[93] *López v. Western Auto*, 171 DPR 185, 195 (2007).

discutió que la negligencia crasa por parte del patrono al no proveer un ambiente laboral seguro no constituye una excepción ante la inmunidad patronal, por lo que el único remedio disponible es aquel provisto por el Fondo[94].

En el caso de marras, concurrimos con el foro recurrido en que aún existen controversias sobre quién produjo o distribuyó el material y si en efecto este tenía un defecto en producción. Según la *Minuta* de la conferencia inicial, el descubrimiento de prueba no ha iniciado. Tanto así, que aún se desconoce quién fue el suplidor de las plataformas, la información de las pólizas, el informe de accidente del fenecido, declaración de nóminas, entre otros. Por lo que resultaría prematuro desestimar el caso de autos en contra de Brand, sin antes darle la oportunidad a los recurridos de utilizar los mecanismos de descubrimiento de prueba.

### IV.

Por los fundamentos antes expuestos, se ***expide*** el auto de *certiorari* solicitado y se ***confirma*** la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[94] *Hernández v. Bermudez & Longo, SE,* 149 DPR 543, 549 (1999).